# IN THE COURT OF APPEALS OF IOWA

No. 15-1373 / 16-0988
Filed October 11, 2017

**TSB HOLDINGS, L.L.C. and 911 N. GOVERNOR, L.L.C.,**
        Plaintiffs-Appellants,

**vs.**

**CITY OF IOWA CITY, IOWA,**
        Defendant-Appellee.
--------------------------------------------------------------

**TSB HOLDINGS, L.L.C. and 911 N. GOVERNOR, L.L.C.,**
        Plaintiffs-Appellants/Cross-Appellees,

**vs.**

**BOARD OF ADJUSTMENT FOR THE CITY OF IOWA CITY,**
        Defendant-Appellee/Cross-Appellant.

---

Appeal from the Iowa District Court for Johnson County, Chad A. Kepros (trial) and Mitchell Turner (motion to amend answer and summary judgment), Judges.

A property owner appeals the district court's grant of summary judgment to the City of Iowa City and the district court's decision in favor of the Board of Adjustment for the City of Iowa City, and the Board of Adjustment appeals the district court's denial of its motion to amend its answer to add affirmative defenses. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Charles A. Meardon of Meardon, Sueppel & Downer, P.L.C., Iowa City, and James W. Affeldt of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellants/cross-appellees.

Elizabeth J. Craig and Sara Greenwood Hektoen, Assistant City Attorneys, Iowa City, for appellees/cross-appellant.

Heard by Doyle, P.J., McDonald, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2017).

**BLANE, Senior Judge.**

TSB Holdings L.L.C. and 911 N. Governor, L.L.C. (TSB) appeal the district court's rulings granting the City of Iowa City's motion for summary judgment and denying TSB's rule 1.904(2) motion. TSB also appeals the district court's decision in a separate case in favor of the Board of Adjustment for the City of Iowa City (BOA). At issue in these cases is the City's decision to rezone certain properties owned by TSB and the BOA's decision to deny TSB's site plans for those properties based on the City's rezoning, which TSB contends interfered with its ability to develop the properties and violated the supreme court's decision in *Kempf v. City of Iowa City*, 402 N.W.2d 393, 401 (Iowa 1987).

In its case against the City, TSB claims the court erred in granting the City's motion for summary judgment, and in denying its motion, because the City's rezoning ordinance violates the district court's 1987 remand order that was entered following the *Kempf* decision. TSB also claims the court erred in concluding in the 1.904(2) ruling that TSB failed to meet the notice pleading requirements for its takings claim.

In its case against the BOA, TSB claims (1) the district court erred in concluding it is not a successor or assign to the properties owned by Kempf, (2) the district court erred in concluding the properties had already been developed through Kempf's inaction and concluding TSB's plans called for the further development or redevelopment of the properties, (3) the district court erred in concluding TSB's actions violate public policy, and (4) the BOA acted illegally in not applying the *Kempf* decision and remand order to its site plans. In a cross-appeal, the BOA claims the district court abused its discretion in denying its

motion to amend its answer to add certain affirmative defenses, specifically the statute of limitations.

With respect to the litigation against the City, we agree the district court correctly granted summary judgment to the City; however, we reverse and remand the district court's order that dismissed TSB's takings claims based on notice pleading. With respect to the BOA litigation, we affirm the district court's decision that the BOA did not act illegally in failing to apply the *Kempf* decision and the remand order to TSB's site plans in light of the supreme court's recent ruling in *Dakota, Minnesota, & Eastern Railroad v. Iowa District Court* (*Dakota Railroad*), 898 N.W.2d 127, 138 (Iowa 2017). In light of this holding, we need not address the BOA's cross-appeal regarding its motion to amend its answer to add affirmative defenses.

## I. Background Facts and Proceedings.

The properties at issue in this matter have a long and storied history in our courts. As detailed in the *Kempf* decision, the properties, located in Iowa City, were acquired by Wayne Kempf and others in 1972 in reliance on the City's 1968 study that proposed the properties be used for medium to high density housing. 402 N.W.2d at 395–96. Kempf started developing the site to construct five apartment buildings and a commercial office building, and invested a total of $114,500 in the land purchase price and preliminary site development. *Id.* After Kempf began construction on a twenty-nine-unit apartment building, several neighboring property owners objected, and the City revoked the previously issued building permit. *Id.* at 396–97. Litigation ensued, which forced the City to reissue permits for the apartment building, and the construction on that building

was completed in 1977. *Id.* at 397. The City imposed a moratorium on further development on the properties and also rezoned the properties in 1978 to prevent further apartment building development. *Id.* at 398. The litigation between the parties culminated in the supreme court's ruling in 1987, which held:

> The record discloses admissible testimony the downzoning of the tract in question would not contribute to public health, safety, or welfare. The open invitation the city extended in "The North Side Study" to proceed with such developments carries with it the plain conclusion there would be no adverse impact on city streets or utilities, nor does the city argue otherwise. The large investment Kempf made in filling, grading, and bringing in utilities for the whole tract in reliance on the zoning and the city's study would provide substantial support for application of the vested rights principle.
>
> Under this record, however, we are not required to develop that analysis because a more limited test controls our determination. The overwhelming evidence discloses the lots in the remaining 2.12 acres of the Kempf tract cannot be improved with any development that would be economically feasible. For this reason we find that application of the downzoning ordinance to the lots in the 2.12 acres would be unreasonable.
>
> The relevant principle is found in McQuillin:
>
> Where it appears that under existing zoning restrictions property must remain for an unpredictable future period unimproved, unproductive, and a source of expense to the owners from heavy taxes, the zoning ordinance is unreasonable as to such property.
>
> 8 McQuillin, *Municipal Corporations* § 25.45, at 122 [(3d ed. 1982)]. Undergirding this rule is the concept that in these situations there is, in effect, an unconstitutional taking. Although a property owner does not necessarily have a remedy if the police regulation merely deprives the owner of the most beneficial use of his or her property, frustration of investment-backed expectations may amount to a taking. . . .
>
> We agree with the trial court that application of the June 28, 1978 zoning ordinance to Kempf's underdeveloped lots and portions of lots would be unreasonable and therefore invalid. We are left with the question of the present and future status of these lots and portions of lots.
>
> . . . .
>
> . . . [W]e hold that [the zoning ordinances at issue] may apply to the Kempf property, provided, however, that Kempf shall be permitted to proceed with the development of apartment

buildings, as shown by the record in this case, to the extent that such buildings conform to the ordinances in effect prior to the 1978 rezoning . . . . The city shall be enjoined from prohibiting this use of the property by Kempf. Further development or redevelopment of the property beyond that contemplated by Kempf as shown by this record and noted in this opinion, whether carried out by Kempf or future owners, will be subject to the amended ordinances above designated.

*Id.* at 400–01 (citations omitted).

The matter was remanded to the district court "for a disposition in conformance with this opinion." *Id.* at 401. On remand, the district court issued a supplementary order that outlined the legal description of the 2.12-acre undeveloped portion of Kempf's land and then provided:

The owner or owners of said properties, and their successors and assigns, shall be permitted to develop those properties with multiple dwellings (apartments) in accordance with the provisions applicable to the R3B zone in effect on May 30, 1978, prior to the rezoning of said real estate which was finalized on June 28, 1978.
. . . The City is and shall be enjoined from interfering with development of those properties as herein provided.
Once a use has been developed or established on any of the above-described properties, further development or redevelopment of that property shall be subject to the zoning ordinances in effect at the time such further development or redevelopment is undertaken.

The language used in the remand order was approved by the attorneys for the parties and the City has never challenged that language.

Following the remand, Kempf applied for and received a building permit to construct a twelve-unit apartment building in 1988–89. In addition, in 1990, Kempf granted the local energy company an electrical easement across a portion of the undeveloped land to provide utilities to the new apartment building. No other development occurred on the properties.

In 2005, the company associated with Kempf and his partners sold a portion of the 2.12 acres of the land at issue in *Kempf* and the land occupied by the two existing apartment buildings to Main Street Partners for $2.4 million. Then in 2009, the properties were sold to TSB for $3.4 million. Tracy Barkalow, owner of TSB, testified he acquired the properties for the existing apartments and to add more apartments per the *Kempf* order as the sellers provided him a copy of the *Kempf* rulings and a 1988 site plan created by Kempf that detailed more apartment buildings on the land. In addition, Barkalow testified his appraiser communicated with the City before the purchase and confirmed the pre-1978 zoning would apply to the properties to construct additional apartments on land under the *Kempf* ruling.

In 2011, the City received and denied a request from a developer to rezone the portion of the land occupied by the commercial building and a small portion of the 2.12 acres at issue in *Kempf*, and the City then reexamined the zoning of all the properties in question. City staff recommended rezoning the properties to prevent high density residential development. In March 2012, the portion of the land occupied by the commercial building was sold by the company associated with Kempf and his partners to 911 North Governor L.L.C. for $200,000.

In January 2013, TSB submitted its first site plan to develop the properties with apartment buildings. That plan was routed to the various City building departments and evaluated under the *Kempf* ruling. However, the plan was ultimately rejected on January 17, 2013.

In light of the new rezoning proposal for the properties, the City put a moratorium into effect on January 22, 2013, to prevent the approval of any site plan. Undeterred, TSB submitted additional site plans in January, which included all properties and provided for the construction of three additional apartment buildings and demolition of the current commercial office building. The City denied the site plans as not complying with the proposed new zoning designation without an evaluation of the application of the *Kempf* ruling.

The City exercised its statutory authority to engage in municipal zoning.[1] As relevant here, in November 2012, the City amended its comprehensive zoning plan. On March 19, 2013, the City adopted an ordinance to bring the properties at issue "into compliance with the City's Comprehensive Plan." Iowa City, Iowa, Ordinance No. 13-4518 (2013). The ordinance rezoned the properties at issue from mutli-family (R3B) and commercial office (CO-1) to high-density single family residential (RS-12) and medium-density multi-family residential (RM-20). The ordinance, in relevant part, provides as follows:

> Whereas, the City of Iowa City has initiated a rezoning of property located of 906 North Dodge Street from Multi-family (R3B) to High-Density Single-Family Residential (RS-12); property located at 911 North Governor Street from Commercial Office (CO-1) to High-Density Single-Family Residential (RS-12); property located at 902 and 906 North Dodge Street from Multi-family (R3B) to

---

[1] Chapter 414 of the Iowa Code empowers cities to engage in zoning for "the purpose of promoting the health, safety, morals, or the general welfare of the community." Iowa Code § 414.1 (2013). To avail itself of the zoning powers conferred by chapter 414, a municipality is required to appoint a "zoning commission," which shall "recommend the boundaries of the various original districts and appropriate regulations and restrictions to be enforced therein." *Id.* § 414.6. Once a zoning commission has been established, the power to regulate land use must be done "in accordance with a comprehensive plan." *Id.* § 414.3. The regulations and restrictions adopted "shall be uniform for each class or kind of buildings throughout each district." *Id.* § 414.2. Any "regulation, restriction, or boundary shall not become effective until after a public hearing at which parties in interest and citizens shall have an opportunity to be heard." *Id.* § 414.4.

> Medium-Density Multi-Family Residential (RM-20) in order to bring the properties into compliance with the City's Comprehensive Plan; and
>
> Whereas, City plans and policies, including the Comprehensive and Strategic Plan, have changed considerably in the last 40 years, with the current Comprehensive Plan and Historic Preservation Plan containing policies to encourage preservation of the single family character of the City's older single family neighborhoods and policies that serve to stabilize these neighborhoods by encouraging a healthier balance of rental and owner-occupied housing rather than redevelopment for housing that serves primarily short-term residents; and
>
> Whereas, the Central District Plan indicates that R3B zoning is obsolete and the properties with this designation should be rezoned to a valid zoning designation;
>
> . . . .
>
> Whereas, the Comprehensive Plan policies in place during the 1960s that led to the R3B zoning on Dodge Street encouraged demolition and redevelopment of older neighborhoods at higher densities; and
>
> Whereas, the City's Zoning Code no longer includes the R3B zoning designation due to its inconsistency with the City's current comprehensive planning goals and polices; . . . .
>
> . . . .
>
> NOW, THEREFORE, BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF IOWA CITY, IOWA:
>
> SECTION I APPROVAL. Property described below is hereby reclassified . . . .

*Id.* The effect of the ordinance on TSB was to allow the existing buildings to remain but prevent any further apartment building construction on the land.

TSB filed two separate challenges in response to the City rezoning the properties. In February 2013, prior to the passage of the ordinance, TSB filed a declaratory judgment action seeking prospective relief. This was docketed as No. EQCV075292. In Count I of its action, TSB requested

> a declaratory decree adjudging the Defendant may not alter the zoning of the property, and that if the Defendant does so, that the altered regulation is, to the extent it applies to the property, unconstitutional and void; that the Court enter a temporary injunction restraining Defendant from altering the zoning of the

property until a hearing has been held; for such other relief as the Court deems just and equitable; and the costs of this action.

Count II of the petition sought a temporary injunction restraining the City from "altering the zoning of the property." In April 2013, TSB timely filed a petition for writ of certiorari challenging the rezoning ordinance. The petition was docketed as No. CVCV075457. It alleged:

The change in the zoning classification was improper, unreasonable, arbitrary and capricious, illegal, contrary to prior rulings of the Supreme Court of Iowa and of the Johnson County District Court, *and would result in an unconstitutional taking of Plaintiff's property*.

(Emphasis added.) In the prayer for relief, TSB requested a writ be issued and that the Defendant's "rezoning of the property be annulled and declared void." The district court consolidated the cases.

The City denied the petitions, and both parties filed motions for summary judgment. The motions came on for a hearing on March 20, 2015, and the court issued its ruling on June 3, 2015. The ruling granted the City's motion on all claims pled by TSB and denied TSB's summary judgment motion. TSB filed a rule 1.904(2) motion seeking clarification as to whether the district court's decision also dismissed its takings claim against the City. The City resisted the 1.904(2) motion, asserting TSB did not adequately plead a takings cause of action. The court enlarged its summary judgment ruling to find:

[TSB] did not meet notice pleading requirements for their purported takings claim. [TSB] made a mere mention of an unconstitutional taking in [its] petition and did not clearly state any separate takings claim or claim for damages. It was the Court's intent, in issuing the June 3, 2015 ruling, that all of [TSB's] claims—[TSB's] entire case—in EQCV075292 and CVCV075457 would be disposed of by the ruling.

Meanwhile, after the rezoning, TSB again submitted site plans to develop the 2.12-acre lot with additional apartment buildings, but the site plans were denied by the City's regulation specialist, and although the appeal was not timely filed, the BOA agreed to hear the appeal. On appeal the BOA denied TSB's site plans. The grounds for denying relief were as follows:

> The Regulations Specialist is subject to the legislative actions of City Council, including the moratorium and rezoning of the subject properties.
> The Regulation Specialist reviewed the site plans based on the RS-12 zoning as required by the moratorium policy in the City Code and the subsequent rezoning of the property.
> Multi-family uses are not permitted in the RS-12 zone.

The BOA also specifically found "the decision as to whether a court order issued in 198[7] preserves the rights of the property owner to develop the properties according to R3B zoning is not within the authority of the Board of Adjustment."

TSB appealed the BOA's denial to the district court through a petition for writ of certiorari and request for declaratory relief. Approximately three months before trial, the BOA sought to amend its answer to include for the first time four affirmative defenses, including failure to state a claim upon which relief may be granted, res judicata, statute of limitations, and laches. The district court denied the motion to amend after finding the amendment would substantially change the issues in the case and TSB would be prejudiced by the late filing. The court granted TSB's motion in limine to prohibit evidence supporting these defenses at the trial.

A bench trial commenced on January 5, 2016, and the district court issued a decision in the BOA litigation in March, concluding the *Kempf* ruling "was personal to Mr. Kempf" "to allow Kempf the opportunity to realize his investment-

backed expectations by completing his development plan." The court held the language in the remand order in *Kempf*, which provided the remand applied to the owner or owners and their successors and assigns, did not apply to TSB in light of the intervening property owners, who did not intend to construct apartment buildings on the property, and in light of the fact the land was not sold at one time as one tract.

The district court further held that Kempf had already established a use on the property by constructing one apartment building and granting the electrical easement following the remand, which meant TSB's plan would be a redevelopment of the property that must comply with the existing zoning ordinances. Finally, the district court concluded that public policy strongly favored the City's denial of the site plans under the City's zoning power:

> To permit [TSB] to construct [its] proposed building on the property at this time would create an unworkable situation when it comes to how the rest of the neighborhood is zoned, and would be against public policy interests that exist with respect to a City's right to amend zoning ordinances when circumstances justify such action.

TSB separately appeals the district court decisions. We have consolidated these cases for the purpose of issuing one opinion in relation to the development of this property.

## II. Scope and Standards of Review.

**A. The City Action:** We review the district court's grant of a motion for summary judgment for correction of errors at law. *City of Johnston v. Christenson*, 718 N.W.2d 290, 296 (Iowa 2006). "Summary judgment is properly granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Iowa R. Civ. P. 1.981(3)).

**B. The BOA Action:** Our review of the district court decision annulling the petition for writ of certiorari and the court's decision denying the request for declaratory judgment is also for the correction of errors at law. *See Stream v. Gordy*, 716 N.W.2d 187, 190–91 (Iowa 2006).

> "A writ of certiorari lies where an inferior tribunal, board, or official, exercising judicial functions, has exceeded its proper jurisdiction or otherwise acted illegally." In such an action, the person seeking the writ has the burden of proof. Review of a certiorari proceeding is for correction of errors at law.
> Likewise, "[a] declaratory judgment action tried at law limits our review to correction of errors at law. We are bound by well-supported findings of fact, but are not bound by the legal conclusions of the district court."

*Id.* (citations omitted) (alteration in original).

**III. The City Action—Rezoning.**

TSB claims the district court erred in its legal conclusion that the City's action in rezoning the properties in question did not violate the district court's supplemental order following the supreme court's remand in *Kempf*. TSB contends the supplemental remand order is an injunction that prohibits the City from "interfering with development of [the] properties" in question and the rezoning of the properties to a classification that does not allow for high density residential development interferes with its injunctive power of development. In support of the interference, TSB points to the fact the BOA denied its site plan for the properties based solely on the City's rezoning decision. It contends the rezoning was the proximate cause of the BOA's site plan denial and the BOA had no power or authority but to apply the zoning ordinance in effect. *See Johnson v.*

*Bd. of Adjustment*, 239 N.W.2d 873, 886 (Iowa 1976) ("Simply stated, a board of adjustment cannot disregard the provisions of, nor exceed the power conferred by, a zoning ordinance."). TSB thus contends the illegality stems not from the BOA site plan denial but from the City's rezoning of the properties.

Initially, we note the district court should not have resolved TSB's action for declaratory judgment on the merits. First, the declaratory judgment action sought only prospective relief—a temporary injunction prohibiting the City from rezoning the property at issue. Once the zoning ordinance passed, the issue was moot. *See E. Buchanan Tel. Coop. v. Iowa Utils. Bd.*, 738 N.W.2d 636, 641 (Iowa 2007) (stating "issues pertaining to a temporary injunction become moot upon the issuance of a permanent injunction"); *In re Marriage of Greiner*, No. 12-0840, 2013 WL 105256, at *1 (Iowa Ct. App. Jan. 9, 2013) (holding application for injunction moot where event sought to be enjoined already occurred). Second, it is questionable whether the zoning ordinance could be challenged by declaratory judgment rather than by a petition for writ of certiorari. *See Sutton v. Dubuque City Council*, 729 N.W.2d 796, 800 (Iowa 2006) (providing the writ of certiorari is the exclusive remedy to "review the decisions of city councils or county boards of supervisors acting in a quasi-judicial capacity when the claimant alleges illegality of the action taken"). The parties have not raised the issues, however, and we need not dwell on them any further because the district court denied TSB's requested relief in its consolidated ruling on both cases.

The grounds for challenging the legality of municipal zoning ordinance are limited. Our supreme court set out the relevant framework:

City zoning ordinances, including any amendments to them, enjoy a strong presumption of validity. The burden is on the person challenging the ordinance to rebut the presumption and demonstrate the ordinance's invalidity. To carry this burden, the challenger must show the ordinance is unreasonable, arbitrary, capricious or discriminatory, with no reasonable relationship to the promotion of public health, safety, or welfare.

In considering the challenger's claim, the court will not substitute its own judgment for that of the city council by passing on the wisdom or propriety of the ordinance. If the ordinance is facially valid and its "reasonableness" is "fairly debatable," the court will not interfere with the city's action.

"An ordinance is valid if it has any real, substantial relation to the public health, comfort, safety, and welfare, including the maintenance of property values." Our prime consideration is the general purpose of the ordinance, not the hardship it may impose in an individual case. We do not focus on individual hardships because property owners in the area affected by a zoning ordinance, as well as adjacent landowners, have no vested right to the continuation of the current zoning. Thus, we will not declare an ordinance invalid simply because it adversely affects a particular property owner.

*Shriver v. City of Okoboji*, 567 N.W.2d 397, 401 (Iowa 1997) (internal citations omitted).

We find the district court's decision must be affirmed for two separate reasons. The first is based upon the language in *Kempf* and the remand order; the second based upon a recent supreme court opinion that terminated the effect of the remand order injunction after the expiration of twenty years—in this case in 2007.

**A.  *Kempf* and remand order language.**

We begin by noting what the *Kempf* opinion and the supplemental remand order said and what they did not say. It all began with a dispute over the rezoning of the properties in question, which eventually brought the *Kempf* case to the supreme court. *Kempf*, 402 N.W.2d at 398. In resolving the case, the

supreme court found the application of the rezoning ordinances to Kempf's properties "would be unreasonable and therefore invalid" because the rezoning would make any development on the properties not "economically feasible." *Id.* at 400–01. However, the court went on to explain that the ordinances "*may apply* to the Kempf property, provided, however, that Kempf shall be permitted to proceed with the development of apartment buildings, as shown by the record in this case, to the extent that such buildings conform to the ordinances in effect prior to the 1978 rezoning." *Id.* at 401 (emphasis added). The supreme court specifically reversed the district court's initial decision that had declared the rezoning ordinances "void" and had imposed the zoning in effect before the ordinances were passed. *Id.* The supreme court also noted further development or redevelopment on the properties beyond that contemplated by Kempf would be subject to the 1978 rezoning ordinances. *Id.* Even TSB acknowledges "the injunction in the Remand Order does not specifically state that the City may not rezone the Property."

In its supplemental remand order, the district court deleted the language in its earlier order that had voided the ordinances and had ordered the property to return to the pre-1978 zoning designation (R3B). It then held the 1978 rezoning was "unreasonable, arbitrary, and capricious" and ordered the "owner or owners of said properties, *and their successors and assigns* shall be permitted to develop those properties with multiple dwellings (apartments) in accordance with the provisions applicable to the R3B zone in effect on May 30, 1978." (Emphasis added.) It further ordered: "Once a use has been developed or established on any of the above-described properties, further development or redevelopment of

that property shall be subject to the zoning ordinances in effect at the time such further development or redevelopment is undertaken."

Thus, both the supreme court's opinion and the supplemental remand order contemplated a zoning designation on the properties that did not authorize the development of high-density residential apartments. The focus of the *Kempf* opinion and the supplemental remand order was not the zoning designation that could be applied to the properties at issue but rather the ability of Kempf and his successors or assigns to develop the property *in spite* of whatever zoning may be applied on the property. *Id.* (ordering the current rezoning ordinance "*may apply* to the Kempf property, provided, however, Kempf shall be permitted to proceed with the development of apartment buildings . . . to the extent that such buildings conform to the ordinances in effect prior to the 1978 rezoning" and any further development or redevelopment "will be subject to the amended ordinances" (emphasis added)). The 1978 rezoning ordinances were not held to be void but only held to be inapplicable to Kempf's development plans. *Id.*

While the *Kempf* decision did not void the 1978 rezoning ordinance, it did enjoin the City from prohibiting the development of the 2.12-acre portion of Kempf's properties with apartment buildings. *Id.* ("The city shall be enjoined from prohibiting this use of the property by Kempf."). Likewise, the district court in the remand order instituted an injunction against the City with respect to the 2.12 acres—"The City is and shall be enjoined from interfering with development of those properties as herein provided." Therefore, we agree with the district court's decision the City's rezoning did not violate the *Kempf* rulings. As the district court found: "The City had the power to rezone [TSB's] property, as delegated to

it by the State of Iowa. . . . To permanently enjoin the City from rezoning would prevent the City from faithfully performing its zoning powers."

## B. Expiration of the *Kempf*/remand order injunction.

TSB's claim for relief against the City fails for a second reason. TSB had the burden to establish the rezoning ordinance was in contravention of *Kempf* and the remand order imposing an injunction against such action by the City. As part of its proof, TSB was required to prove the *Kempf* injunction was still valid and enforceable. But it is not.

After the appeal in this case was filed, the supreme court decided *Dakota Railroad*, 898 N.W.2d at 138.[2] At issue in that case was whether a "1977 judgment granting an injunction of unspecified duration against a former owner of [a] right-of-way [was] enforceable nearly forty years later through a contempt action against a subsequent purchaser." *Dakota Railroad*, 898 N.W.2d at 129. The supreme court held the judgment "*expired* under Iowa Code section 614.1(6)" and was not enforceable. *Id.* (emphasis added).

Here, *Kempf* was decided in 1987. The remand order was issued in 1987. According to *Dakota Railroad* the injunction thus "expired" in 2007 and is now without any further force or effect. *See id.* at 135 ("Because the judgment granting injunctive relief was not renewed before it expired, DM & E contends it may not be held in contempt for failing to perform its mandates. We agree. Since we conclude the contempt proceedings purport to enforce an injunction that lapsed in 1997, we do not reach the other statutory, constitutional, and

---

[2] The supreme court opinion in *Dakota Railroad* was issued while these appeals were pending. We then asked for and received from the parties supplemental briefs on the impact of *Dakota Railroad* on these appeals.

prudential issues raised in the district court."); *id.* at 138 ("The twenty-year period commenced when the judgment was entered. Because the 1977 judgment was not renewed, it expired in 1997, well before the attempt to enforce it against DM & E was commenced."). TSB cannot rely on an "expired" judgment that established the injunction to claim illegality of the City's rezoning of the property in issue.

We affirm the district court's grant of the City's summary judgment motion. However, that is not the end of the story. TSB also challenges the BOA's denial of its site plan that it contends complied with the *Kempf* rulings.

## IV. The BOA Action—Site Plans.

After a bench trial on TSB's claims the BOA acted illegally in denying its site plans, the district court agreed with the BOA that the supreme court's opinion in *Kempf* and the subsequent remand order did not apply to TSB. Specifically, the district court agreed with the BOA that TSB was not a "future owner" or an "owner or owners and their successors and assigns" within the meaning of the remand order. It also concluded that the 2.12-acre portion of the properties had already been developed or established such that any work done by TSB would be a redevelopment that must comply with the current zoning for the property. Because of these conclusions, the district court determined the BOA did not act illegally in denying TSB's site plans and it would be a violation of public policy to permit TSB to develop the property as proposed. TSB challenges the district court's conclusions.

TSB's appeal of the district court ruling is based upon its claimed rights under the supreme court *Kempf* opinion and the remand order. However, as

noted above, the injunction in the remand order upon which TSB relies, under *Dakota Railroad*, expired in 2007 and no longer provides it any legal footing. For this reason, we need not specifically address the issues regarding the district court's interpretation of *Kempf* and the remand order with respect to "future owner," "successors or assigns," and "development" and "redevelopment" of the properties. Nor do we need to address whether applying *Kempf* and the remand order to the proposed site plan would violate public policy. In addition, TSB concedes its claim the BOA acted illegally "stands or falls with the vitality of *Kempf* and the remand order." Because *Kempf* and the remand order expired in 2007, the BOA did not act illegally in failing to apply those orders to TSB's site plans.

TSB is left in something of a quandary, and it raised the issue in this appeal. TSB concedes Iowa City had the authority to rezone the properties at issue in accord with the City's comprehensive plan. TSB also concedes the BOA acted properly in denying TSB's appeal based on the zoning ordinances in place at the time. TSB's real argument is that the denial of the site plan was an interference with the development of the properties at issue in contravention of *Kempf* and the remand order. The correct method for raising this challenge was an application for order to show cause, as in *Dakota Railroad*. 898 N.W.2d at 133–34. As set forth above, based upon *Dakota Railroad*, it seems doubtful now that TSB would be entitled to any relief under the *Kempf* injunction as it has expired, but since TSB did not file an application for order to show cause that issue is not before us. The narrow issues before us are whether the City acted illegally in passing a zoning ordinance and whether the BOA acted illegally in

denying TSB's site plan in light of the *Kempf* decision and remand order. Ultimately, because the injunction imposed under *Kempf* is now expired, we cannot conclude the City or the BOA acted illegally under the circumstances.

## V. The BOA Action—Motion to Amend Answer.

In its cross-appeal, the BOA asserts the district court abused its discretion in denying its motion to amend its answer to add affirmative defenses, particularly the defense of the statute of limitations applicable to a judgment of record under Iowa Code section 614.1(6). In light of our affirmance of the district court in the BOA action, this issue is now moot, and we need not address it further.

## VI. The City Action—Notice Pleading.

Finally, TSB claims the court erred in ruling on its 1.904(2) motion that it did not meet the notice pleading requirements for its takings claim. In light of our decision affirming the district court's decision in favor of the BOA and the City, TSB's claim that the rezoning of his property resulted in an unconstitutional taking is now ripe for resolution.

Iowa is a notice-pleading state. *Rieff v. Evans,* 630 N.W.2d 278, 292 (Iowa 2001); *see* Iowa R. Civ. P. 1.402(2)(a). Under notice pleading, a party is not required to plead or identify specific legal theories of recovery or even allege ultimate facts supporting a claim. *Am. Family Mut. Ins. Co. v. Allied Mut. Ins. Co.,* 562 N.W.2d 159, 163 (Iowa 1997). A petition must contain factual allegations that give the defendant fair notice of the claim asserted so the defendant can adequately respond to the petition. *Id.* "The 'fair notice' requirement is met if a petition informs the defendant of the incident giving rise to

the claim and of the claim's general nature." *U.S. Bank v. Barbour,* 770 N.W.2d 350, 353 (Iowa 2009). A pleader need not even identify specific legal theories in a petition. *Cemen Tech. Inc. v. Three D Indus., L.L.C.*, 753 N.W.2d 1, 12 (Iowa 2008) (citing *Roush v. Mahaska State Bank*, 605 N.W.2d 6, 9 (Iowa 2000)).

In this case, TSB alleged that the passing of ordinance 13-4518 would result in an unconstitutional taking of its property. In addition, TSB's petition in CVCV075457 contains a prayer for general equitable relief—"Plaintiff prays that [sic] for such further relief as the court deems just and equitable in the premises." Such a prayer is liberally construed and "will often justify granting relief in addition to that contained in the specific prayer, provided it fairly conforms to the case made by the petition and the evidence." *Lee v. State*, 844 N.W.2d 668, 679 (Iowa 2014).

The issue before the trial court was whether TSB's petition provided the City notice of the incident giving rise to its takings claim and the general nature thereof. The admitted failure of the petition in CVCV075457 to have a separate takings claim or claim for damages is not fatal. TSB's petition, which called the rezoning an unconstitutional taking of TSB's properties, puts the City on fair notice of the facts giving rise to the claim and its general nature. The City had notice of such a claim all along and has never contended otherwise. TSB's petition provided: "If the property is downzoned, it will result in a substantial decrease in value of the property, and likely a claim for damages against the City." *See Rick v. Boegel*, 205 N.W.2d 713, 715 (Iowa 1973) ("When the petition is not attacked until after [the] answer, the petition will be liberally construed in favor of plaintiff so as to effectuate justice, and pleader will be given advantage of

every reasonable intendment."). Given the allegations in TSB's petition and the applicable liberal pleading rules, the trial court erred in concluding that TSB's petition did not meet notice pleading requirements. The district court's ruling must be reversed and the case remanded for further proceedings on TSB's takings claim.

## VII. Conclusion.

With respect to the City rezoning action, we agree the district court correctly granted summary judgment to the City because the rezoning of the property in 2013 did not violate the *Kempf* decision or the remand order. Further, based upon the supreme court case of *Dakota Railroad,* the injunction in the remand order based upon *Kempf* expired in 2007, and thus, it could not have barred the City's rezoning in 2013.

We also affirm the district court's decision in the BOA action that the BOA did not act illegally in denying TSB's site plans, but for reasons different from those expressed by the district court. We also conclude the BOA's cross-appeal as to the district court denying the BOA's motion to amend its answer to add affirmative defenses is moot. Finally, we conclude the district court erred in finding TSB had failed to assert a takings claim in its petition against the City and remand that claim to the district court for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Doyle, P.J., and McDonald, J., concur specially.

**MCDONALD, Judge** (concurring specially).

I concur in full with the majority's well-reasoned resolution of the issues presented in this consolidated appeal. I write separately to address *Dakota, Minnesota & Eastern Railroad v. Iowa District Court* (*Dakota Railroad*), 898 N.W.2d 127 (Iowa 2017), and to offer additional reasons for affirming the judgments of the district court independent of any reliance on *Dakota Railroad*.

I.

I concur in the majority's interpretation of *Dakota Railroad* and its application to the facts of this case. To prove the City or the BOA acted illegally, TSB was required to prove the *Kempf* injunction was enforceable, that TSB had rights under the *Kempf* injunction, and the City or the BOA acted contrary to TSB's rights under the *Kempf* injunction. *See Bd. of Adjustment v. Ruble*, 193 N.W.2d 497, 503 (Iowa 1972). *Dakota Railroad* dictates the conclusion the *Kempf* injunction expired of its own force after twenty years and TSB is thus not entitled to any relief under the injunction. *See Dakota Railroad*, 898 N.W.2d at 138. With respect to this conclusion, although I agree with the majority's interpretation of *Dakota Railroad*, I confess doubt. Does *Dakota Railroad* really mean what is says? Do all judgments "expire" of their own force if not renewed within twenty years? There are several reasons to think not.

The text of the relevant statute does not provide judgments "expire" after twenty years. *Dakota Railroad* states "[t]he Iowa legislature has expressly constrained the *duration of judgments* by prescribing that '[a]ctions may be brought within the times herein limited . . . and not afterwards.'" *Id.* at 140 (emphasis added) (quoting section 614.1) (alteration in original). Except the

statutory provision cited does not regulate the "duration of judgments." It regulates only when "[a]ctions may be brought" to enforce a judgment. Iowa Code § 614.1 (2013). The statute provides that an "action" "founded on a judgment of a court of record" must be brought "within twenty years." Iowa Code § 614.1(6). The statute does not provide the judgment "expires" after twenty years; it provides only that an "action" on a judgment cannot be brought after twenty years. To flesh out the distinction, consider another provision in the same section. The statute of limitations provides that an "action" "founded on written contracts" must be brought "within ten years." Iowa Code § 614.1(5). The statute does not provide a written contract expires within ten years; it provides only that an "action" on a written contract cannot be brought after ten years. In contrast, when the legislature intends to regulate the duration of a judgment such that the judgment expires after a certain period of time, it has used language requiring that result. *See* Iowa Code § 615.1 (providing that certain judgments related to real estate shall be "null and void" after two years); *U.S. Bank Nat'l Ass'n v. Lamb*, 874 N.W.2d 112, 119 (Iowa 2016) (interpreting section 615.1 to mean "judgment lien is null and void after the passage of two years from the date of judgment").

*Dakota Railroad* also ignores the accrual language in the statute of limitations. Section 614.1 provides "[a]ctions may be brought within the times herein limited, respectively, after their causes accrue." *Dakota Railroad* holds the twenty-year period commences on the date of judgment entry and the judgment expires if not renewed prior to the twenty-year period. *See* 898 N.W.2d at 138 ("The twenty-year period commenced when the judgment was entered. Because

the 1977 judgment was not renewed, it expired in 1997, well before the attempt to enforce it against DM & E was commenced."). It may be true that a cause of action on a money judgment accrues on the date of judgment. It may also be true that a cause of action to enforce an injunction compelling affirmative action—i.e., the injunction at issue in *Dakota Railroad*—accrues on the date of judgment entry. However, it is not true that a cause of action on all judgments or injunctions accrues on the date of judgment entry. Consider, for example, the injunction in this case. The injunction in this case restrained an interference with rights. The City was prohibited from interfering with Kempf's development of the properties. Assume Kempf had kept the properties but not submitted a site plan until after twenty years had passed. If the City then denied the site plan, the cause of action would not have accrued until the denial of the site plan in contravention of the injunction. *Dakota Railroad* appears to hold the judgment expires after twenty years without regard to when the action accrues. This seems contrary to the plain language of the statute.

There is a third textual difficulty with *Dakota Railroad*. At issue in that case was an Iowa judgment, and the court held the "duration" of the judgment was twenty years and the judgment expired if not renewed within the twenty-year period. *See id.* However, the statute of limitations applies to more than Iowa judgments. Section 614.1(6) sets forth the statute of limitations for any action to enforce any "judgment of a court of record, whether of this or of any other of the United States, or of the federal courts of the United States." While the Iowa legislature has the authority to regulate the duration of judgments entered in Iowa, the legislature does not have the authority to regulate the duration of

judgments issued by other states or federal courts. Instead, it has the authority to regulate when causes of action on those judgments must be filed in this state. The fact that the Iowa legislature can regulate only causes of action to enforce foreign judgments rather than the actual duration of foreign judgments strongly indicates the statutory provision at issue does not regulate the duration of judgments.

There is also a doctrinal reason to conclude *Dakota Railroad* did not mean what it said. It is not disputed the chapter at issue sets forth the statute of limitations on causes of action. A statute of limitations is an affirmative defense that must be raised by the party relying on the defense, which then has the burden of proving the claim is time-barred. If the defense is not pleaded, then it is waived. *See Cuthburtson v. Harry C. Harter Post No. 839 of the V.F.W.*, 65 N.W.2d 83, 87 (Iowa 1954) (stating "a party relying upon the statute of limitations as a defense must specifically plead that fact and he must also show the facts constituting the bar" and "[a] failure to plead a limitation statute operates as a waiver of this defense"). It is reversible error for the district court to raise the statute of limitations sua sponte. *See, e.g., Carter v. Fleener*, No. 10-1970, 2011 WL 5867061, at *7 (Iowa Ct. App. Nov. 23, 2011) (reversing judgment where the district court raised statute of limitations sua sponte). However, concluding a judgment expires if not renewed within twenty years means the judgment is void and the court would be required to raise the issue on its own motion. For this reason, the holding of *Dakota Railroad* is not in accord with our case law regarding affirmative defenses.

Finally, it seems *Dakota Railroad* creates some practical problems with respect to real property. Rights in real property are frequently established by legal judgment. For example, in *Murrane v. Clarke County*, 440 N.W.2d 613, 615 (Iowa Ct. App. 1989), this court affirmed a judgment establishing an easement by prescription. In *Maisel v. Gelhaus*, 416 N.W.2d 81, 89 (Iowa Ct. App. 1987), this court affirmed a permanent injunction barring certain landowners "from obstructing the natural flow of surface waters across their property." What is the status of these judgments after *Dakota Railroad*? Has the permanent injunction in *Maisel* expired of its own force? Is the restrained property owner now free to obstruct the natural flow of surface waters across their property to the detriment of the prevailing landowners? Under *Dakota Railroad*, it appears so.

Perhaps the above-stated concerns warrant a narrower reading of *Dakota Railroad*. Perhaps *Dakota Railroad* merely stands for the proposition that a cause of action to enforce a judgment expires twenty years after the cause of action accrues. While that reading of *Dakota Railroad* might address the concerns raised here, it does not jibe with the language of the opinion. It seems clear *Dakota Railroad* intends to limit the duration of judgments rather than causes of actions to enforce judgments. Indeed, the court specifically rejected persuasive authority that took the more narrow approach:

> The twenty-year period commenced when the judgment was entered. Because the 1977 judgment was not renewed, it expired in 1997, well before the attempt to enforce it against DM & E was commenced. To hold otherwise would be to determine that proceedings to enforce an injunction initiated by an application to show cause or other postjudgment motion would be subject to no limitations period and thus "forever hold the defendant in fear of enforcement with no hope of repose."
>     . . . .

We acknowledge that an Illinois court has decided a similar issue differently. In *People ex. rel. Illinois State Dental Society v. Norris*, the court rejected an argument that a writ of injunction lapsed under a statute of limitations on judgments, stating,

On appeal the defendant first argues that the 1968 writ of injunction lapsed and became unenforceable because the injunction judgment had not been renewed by the plaintiffs through scire facias or other proceedings within seven years of its issuance. The defendant further contends that since the injunction expired prior to November of 1976, he should not have been subjected to contempt proceedings for acts allegedly committed in November and December of that year. We disagree. An injunction remains in full force and effect until it has been vacated or modified by the court which granted it or until the order or decree awarding it has been set aside on appeal. Such a decree or order must be obeyed, even if erroneous, until it is overturned or modified by orderly processes of review. An injunction can be modified or dissolved when the court finds that the law has changed or that equity no longer justifies a continuance of the injunction.

398 N.E.2d 1163, 1168 (Ill. App. Ct. 1979) (citations omitted). Because we believe our statutory framework requires a different outcome, we do not find the Illinois court's decision persuasive.

*Dakota Railroad*, 898 N.W.2d at 138–40. In addition, it would be hard to conclude the opinion relates to the statute of limitations when the word "accrue" does not appear anywhere in the opinion. Thus, despite my concerns regarding *Dakota Railroad*, like the majority, I take it at its word. The injunction at issue had a duration of twenty years and expired in 2007. It thus affords no ground of relief for TSB.

II.

Even assuming the *Kempf* injunction did not expire of its own force, there are additional reasons—beyond those discussed in the majority opinion—to

conclude TSB is not entitled to any relief with respect to its actions challenging the zoning ordinance.

First, TSB failed to prove the City's adoption of the ordinance was illegal, arbitrary, or capricious within the meaning of the relevant statutes and controlling case law. Chapter 414 of the Iowa Code empowers cities to engage in zoning for "the purpose of promoting the health, safety, morals, or the general welfare of the community." Iowa Code § 414.1. To avail itself of the zoning powers conferred by chapter 414, a municipality is required to appoint a "zoning commission," which shall "recommend the boundaries of the various original districts and appropriate regulations and restrictions to be enforced therein." Iowa Code § 414.6. Once a zoning commission has been established, the power to regulate land use must be done "in accordance with a comprehensive plan." Iowa Code § 414.3. The regulations and restrictions adopted "shall be uniform for each class or kind of buildings throughout each district." Iowa Code § 414.2. Any "regulation, restriction, or boundary shall not become effective until after a public hearing at which parties in interest and citizens shall have an opportunity to be heard." Iowa Code § 414.4. Here, the challenged ordinance was in accord with the City's comprehensive plan. The city council set a public hearing on the proposed ordinance, published notice of the hearing, and held the hearing as scheduled. After the public hearing, the ordinance was adopted. All of the City's actions were in accord with chapter 414 of the Code and Iowa City Code of Ordinances. There was no illegality in the manner in which the challenged ordinance was passed.

Second, the relief afforded in *Kempf* was personal to Kempf and not available to TSB. The supreme court stated "Kempf shall be permitted to proceed with the development of the apartment buildings." *Kempf v. City of Iowa City*, 402 N.W.2d 393, 401 (Iowa 1987). The supreme court enjoined the city "from prohibiting this use of the property by Kempf." *Id.* The supreme court then remanded the matter to the district court for "disposition in conformance with this opinion." *Id.* The language of the remand order was far broader than the *Kempf* opinion. The pertinent part provides:

> The owner or owners of said properties, and their successors and assigns, shall be permitted to develop those properties with multiple dwellings (apartments) in accordance with the provisions applicable to the R3B zone in effect on May 30, 1978, prior to the rezoning of said real estate which was finalized on June 28, 1978.

TSB cannot challenge the City's zoning ordinance as a successor or assign within the meaning of the remand order, however. "[T]he district court upon such remand [was] limited to do the special thing authorized by the appellate court in its opinion and nothing else." *In re Marriage of Davis*, 608 N.W.2d 766, 769 (Iowa 2000) (citing *Kuhlmann v. Persinger*, 154 N.W.2d 860, 864 (Iowa 1967)). The district court lacked authority to do anything beyond the mandate. On our own motion, we are required to treat as "null and void" anything in the remand order beyond the scope of the mandate. *See Davis*, 608 N.W.2d at 769. Simply put, TSB had no rights under *Kempf*. TSB thus cannot meet its burden in establishing the City acted illegally with respect to TSB.

III.

Even assuming the *Kempf* injunction did not expire of its own force, there are additional reasons—beyond those stated in the majority opinion—to conclude TSB is not entitled to any relief with respect to its challenge to the BOA's action.

By way of background, the Code requires any city council exercising zoning authority to create a board of adjustment. *See* Iowa Code § 414.7. "Under the general statutory scheme of city zoning in this State, the power to grant variances and exceptions is exercised solely by the board of adjustment." *City of Johnston v. Christenson*, 718 N.W.2d 290, 298 (Iowa 2006). The board of adjustment's authority to grant variances and exceptions and otherwise act is limited by the statutes and ordinances creating the board of adjustment. As relevant here, the statute provides the board with the authority:

> 1. To hear and decide appeals where it is alleged there is error in any order, requirement, decision, or determination made by an administrative official in the enforcement of this chapter or of any ordinance adopted pursuant thereto.
> 2. To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance.
> 3. To authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

Iowa Code § 414.12.

With respect to these statutory powers, "[a]n illegality is established if the board has not acted in accordance with a statute; if its decision was not supported by substantial evidence; or if its actions were unreasonable, arbitrary,

or capricious." *Geisler v. City Council*, 769 N.W.2d 162, 168 (Iowa 2009). TSB bears the burden of proving an entitlement to relief.

I first address the question of whether the BOA illegally exercised its powers under section 414.12(1). Pursuant to this provision, the BOA may "hear and decide appeals where it is alleged there is error in any . . . decision . . . made by an administrative official." Iowa Code § 417.12; *Fetkether v. City of Readlyn*, 595 N.W.2d 807, 811 (Iowa Ct. App. 1999).

> In exercising the above mentioned powers, the board of adjustment may, in conformity with the provisions of this title or ordinances adopted pursuant thereto, affirm, or upon finding error, reverse or modify, wholly or partly, the order, requirement, decision or determination appealed from and may make such order, requirement, decision or determination as ought to be made, and to that end, shall have all the powers of the officer from whom the appeal is taken.

Iowa City Municipal Code § 14-8C-3(B)(4). As seen from the plain language of the statute and ordinance, the BOA exercises only limited administrative and quasi-judicial powers when reviewing the decision of a city official pursuant to this provision. *See Depue v. City of Clinton*, 160 N.W.2d 860, 863 (Iowa 1968) (stating "[t]he foregoing cases all indicate an interpretive history for Chapter 414 which would require the city to place *what we have called the quasi-judicial function of granting special exceptions in the board of adjustment*" (emphasis added)). The board does not have legislative power to amend ordinances or grant relief contrary to statutes or ordinances. *See Greenawalt v. Zoning Bd. of Adjustment*, 345 N.W.2d 537, 544 (Iowa 1984) ("The board, therefore, merely has authority to determine whether exceptions to an ordinance are to be allowed. It cannot amend or change an ordinance or declare an ordinance

unconstitutional."); *Johnson v. Bd. of Adjustment*, 239 N.W.2d 873, 886 (Iowa 1976) ("Simply stated, a board of adjustment cannot disregard the provisions of, or exceed the power conferred by, a zoning ordinance."); 8A Eugene McQuillin, *The Law of Municipal Corporations* § 25.256 at 408 (3d ed. 2012).

With the foregoing principles in mind, I cannot conclude the BOA acted illegally in reviewing the City's denial of TSB's site plan pursuant to section 414.12(1). TSB concedes this issue, stating "the illegality stems not from the BOA's denial of TSB's site plan but from the passage of ordinance 13-4518 which served as the reason for the denial of TSB's site plan." TSB's concession is a correct statement of law. The controlling statutes do not provide the BOA with authority to negate or ignore a zoning ordinance. Under the controlling statutes and ordinances, the BOA was only empowered to correct a decision of the official where the official's decision was contrary to the city's ordinances. The BOA has no power to interpret or apply the injunction at issue to void the City's action. TSB thus failed to prove the board acted in violation of section 414.12(1).

I next address whether TSB proved the BOA violated section 414.12(2) or (3). Pursuant to these provisions, a board may be empowered to grant variances, special exceptions, and provisional uses. *See* Iowa City, Iowa, Ordinance Nos. 14-8C-2; 14-4B-3; 14-4B-4. The applicant has the burden of proving all of the criteria necessary to obtain a variance or exception by a preponderance of the evidence. *See id.* While the ordinances allow for certain variances and use exceptions, they do not allow a variance or exception that would allow a land use other than that specifically allowed in the zoning district in which the property is located. *See* Iowa City Ordinance Nos. 14-4B-2, 3, 4; *see*

*also Graziano v. Bd. of Adjustment*, 323 N.W.2d 233, 237 (Iowa 1982) ("The board cannot alter the zoning ordinances by granting variances; it may not legislate."); 8A Eugene McQuillin, *The Law of Municipal Corporations* § 25.257 at 411 (3d ed. 2012) (stating "boards are created mainly to deal with situations calling for permits, variances, and similar matters, not as a legislative body to correct errors of judgement in zoning laws").

With these principles in mind, I conclude TSB has not proved the BOA improperly denied a request for a variance or exception. TSB concedes it did not request a variance or special exception. Even if TSB had not conceded the issue, the claim would fail. TSB has not identified the statutory provision the board allegedly violated. TSB has not identified the ordinance the board allegedly violated. Indeed, the ordinances specifically prohibit the board from granting a variance or exception that would allow a land use other than that specifically allowed in the zoning ordinance. *See* Iowa City Ordinance Nos. 14-4B-2, 3, 4. The BOA has no authority to grant an application for a variance, exception, or conditional use permit that fails to satisfy the requirements of the ordinances. *See W & G McKinney Farms, L.P. v. Dallas County Bd. of Adjustment*, 674 N.W.2d 99, 103–04 (Iowa 2004). TSB is thus not entitled to relief on these grounds.

IV.

For the foregoing reasons, I concur in full with the disposition of the consolidated appeals.

**DOYLE, Presiding Judge** (concurring specially).

I concur with the disposition of the consolidated appeals, but write separately to express my wholehearted agreement with Judge McDonald's insightful analysis of *Dakota Railroad*. Despite our concerns with *Dakota Railroad*, ours is not to reason why, ours is but to do and apply.[3] As an intermediate court of appeals, we are restrained from ignoring or disturbing Iowa Supreme Court precedent. *See State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent."); *see also State v. Miller*, 841 N.W.2d 583, 584 n.1 (Iowa 2014) ("Generally, it is the role of the supreme court to decide if case precedent should no longer be followed."); *State v. Hughes*, 457 N.W.2d 25, 28 (Iowa Ct. App. 1990) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves." (quoting *State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957))).

---

[3] Apologies to Alfred, Lord Tennyson, who wrote:
> Someone had blundered:
> Theirs not to make reply,
> Theirs not to reason why,
> Theirs but to do or die.

*See* Alfred Tennyson, *The Charge of the Light Brigade*, The Examiner, Dec. 9, 1854, at 780.