# IN THE SUPREME COURT OF IOWA

No. 44 / 05-1212

Filed September 14, 2007

**EAST BUCHANAN TELEPHONE
COOPERATIVE, an Iowa Cooperative,**

Appellant,

vs.

**IOWA UTILITIES BOARD, a Division of
the Iowa Department of Commerce,**

**and**

**U.S. CELLULAR CORPORATION,
QWEST CORPORATION, and OFFICE OF
CONSUMER ADVOCATE,**

Appellees,

_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

A telephone cooperative appeals from a district court decision holding the Iowa Utilities Board had authority to temporarily and permanently enjoin the cooperative from blocking wireless transit traffic delivered to it by another carrier. **AFFIRMED.**

Thomas G. Fisher, Jr., of Parrish, Kruidenier, Dunn, Boles, Gribble, Cook, Parrish, Gentry & Fisher, L.L.P., Des Moines, for appellant.

David J. Lynch and Penny G. Baker, Des Moines, for appellee Iowa Utilities Board.

Bret A. Dublinske of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellee U.S. Cellular Corporation.

David S. Sather and Timothy J. Goodwin, Des Moines, for appellee Qwest Corporation.

**HECHT, Justice.**

The Iowa Utilities Board issued orders temporarily and permanently enjoining East Buchanan Telephone Cooperative (EBTC) from blocking the delivery of telephone calls originated by customers of wireless telecommunications carriers and transmitted to EBTC by Qwest Corporation. EBTC sought judicial review, contending the board has no authority to issue temporary or permanent injunctions; and asserting in the alternative, if the board has such authority, the evidence does not support injunctive relief against EBTC in this case. EBTC appeals from the district court's ruling affirming the board's decision.

## I.     Background Facts and Proceedings.

EBTC provides phone, cable television, and internet services to four small communities in Buchanan County: Winthrop, Quasqueton, Aurora, and Stanley. EBTC generates part of its income by charging "access charges"[1] to other telecommunications carriers, including Qwest, whose customers place calls to EBTC's members.

Qwest is one of several regional Bell operating companies referred to as "Baby Bells."[2] Qwest earns part of its revenue from fees charged for transmitting wireless calls placed by the customers of other wireless carriers such as U.S. Cellular to the customers of local exchange carriers such as EBTC. Prior to 1999, EBTC billed and Qwest paid access charges for all wireless traffic transmitted by Qwest to EBTC without regard either to the identity of the originating carrier or whether the traffic originated from within or outside EBTC's local exchange area.

---

[1]Access charges are fees charged by local exchange carriers for the use of their infrastructure in the delivery of calls originated by customers of other carriers. *Iowa Network Servs., Inc v. Qwest Corp.*, 363 F.3d 683, 686 (8th Cir. 2004).

[2]*See* http://www.bell.com/rbocs.htm.

Qwest notified EBTC in 1999 that Qwest would no longer pay access charges for wireless calls originated by customers of other wireless carriers and transited by Qwest to EBTC, claiming it had no legal obligation to do so. EBTC continued, however, to bill Qwest for such traffic.

On July 12, 2004, EBTC, dissatisfied with its continuing uncompensated delivery of wireless transit traffic originated by other carriers and transmitted to it by Qwest, sent two letters intended to force a resolution of the commercial dispute. One of the letters was sent to Qwest demanding that it stop transmitting telephone traffic to EBTC, except those calls for which Qwest was willing to pay access charges; and notifying Qwest that EBTC would begin blocking the delivery of all other calls transmitted by Qwest for delivery to EBTC's customers on August 16, 2004. The other letter sent by EBTC notified U.S. Cellular of EBTC's demand to Qwest and EBTC's intent to block traffic in the event Qwest failed to meet the demand for payment of EBTC's access charges.

Qwest and U.S. Cellular filed complaints with the Iowa Utilities Board on August 13, 2004, requesting "emergency injunctive relief" against EBTC. The complainants asserted a prior decision of the board established that EBTC had no legal right to block the wireless traffic transmitted to it by Qwest for other carriers.[3] The board found EBTC's threat to block calls to its customers constituted an immediate danger to public safety because wireless callers would be unable to reach "family, friends, police, or a doctor in EBTC's exchange in an emergency."[4] On August 13, 2004, the board

---

[3]*See* Proposed Decision & Order, *In re Exch. Of Transit Traffic*, SPU-00-7 (Iowa Utils. Bd. Nov. 26, 2001), *aff'd*, Order Affirming Proposed Decision & Order (Iowa Utils. Bd. Mar. 18, 2002) (concluding that a transiting carrier is not obligated to pay access charges on "intraMTA traffic" - wireless originated or terminated traffic within a federally-defined major trading area).

[4]The board made this finding notwithstanding EBTC's claim that it would not block 911 calls.

issued what it characterized as a "temporary injunction" forbidding EBTC from blocking calls transmitted by Qwest. The board also docketed the matter for investigation, consolidated the complaints filed by Qwest and U.S. Cellular, and scheduled a hearing on the question whether it was lawful for EBTC to block all telephone traffic received from Qwest except calls properly identified as Qwest toll traffic.[5]

After a hearing, the board concluded EBTC's plan to block calls would (1) discontinue or impair service to a community or part of a community in violation of Iowa Code section 476.20(1) (2003), and (2) disadvantage customers who had chosen to receive services from another telecommunications carrier in violation of section 476.101(9). On December 23, 2004, the board issued what it characterized as an "Order Granting Injunctive Relief" permanently "enjoining" EBTC from blocking transit traffic, without board approval, transmitted by Qwest.[6]

EBTC filed a petition for judicial review urging the district court to dissolve the permanent injunction on the ground the board lacked authority to grant injunctive relief under chapter 17A.[7] The district court concluded the board has authority to issue temporary injunctive relief in emergency adjudicative proceedings to avert an immediate danger to the public health, safety, or welfare under section 17A.18A(1), and that substantial evidence supported the board's determination that such a danger would be created if

---

[5]Qwest at all times conceded it owed, and it in fact paid to EBTC, access charges on the toll traffic originated by Qwest's own customers.

[6]The board's order noted that although EBTC could not legally block the disputed traffic under the circumstances of this case, a local exchange carrier is entitled to compensation for the delivery of wireless traffic originated by wireless carriers such as U.S. Cellular. The board recommended remedial options for EBTC including a negotiated interconnection agreement with wireless carriers or a request for arbitration.

[7]Qwest, U.S. Cellular, and the Office of Consumer Advocate intervened in the judicial review proceeding.

EBTC's plan to block wireless traffic were not enjoined. The district court further concluded the board's order of December 23, 2004 "permanently enjoin[ing]" EBTC from blocking the traffic at issue was within the board's broad powers under chapter 476 because it merely directed EBTC to follow the law.

EBTC asserts on appeal to this court that the board has no authority to issue temporary or permanent injunctions. EBTC claims in the alternative that even if the board has authority to grant temporary injunctive relief in emergency adjudicative proceedings under section 17A.18A(1), there is no factual basis for a grant of such relief in this case because the complainants failed to establish (1) the existence of an immediate danger to the public health, safety, or welfare arising from EBTC's plan to block calls; and (2) equitable grounds for injunctive relief (an invasion or threatened invasion of a right, substantial injury or damages will result if an injunction is not granted, and no adequate legal remedy is available).[8]

## II. Scope and Standards of Review.

Our review in this case is governed by section 17A.19 of the Iowa Administrative Procedure Act (IAPA). *AT&T Commc'ns of the Midwest, Inc. v. Iowa Utils. Bd.*, 687 N.W.2d 554, 557 (Iowa 2004). "We review the district court's decision by applying the standards of the [IAPA] to the agency action to determine if our conclusions are the same as those reached by the district court." *Univ. of Iowa Hosp. & Clinics v. Waters*, 674 N.W.2d 92, 95 (Iowa 2004). We must " 'reverse, modify, or grant other appropriate relief' if we conclude a person's substantial rights have been prejudiced because of

---

[8]EBTC does not challenge on appeal the merits of the board's determinations that (1) Qwest does not owe access charges to EBTC on the disputed traffic, and (2) EBTC has no legal right to block the traffic.

the agency action," and the agency action is a type listed in Iowa Code section 17A.19(10). *AT&T*, 687 N.W.2d at 557 (quoting Iowa Code § 17A.19(10)).

### III.  Discussion.

**A.  Temporary Injunction.**  We only decide cases involving an actual, justiciable controversy; we do not resolve moot issues. *In re T.S.*, 705 N.W.2d 498, 501 (Iowa 2005).  We have held that because "a temporary injunction generally merges into [a] permanent injunction," issues pertaining to a temporary injunction become moot upon the issuance of a permanent injunction. *Matlock v. Weets*, 531 N.W.2d 118, 121–22 (Iowa 1995) (citing *Foods, Inc. v. Leffler*, 240 N.W.2d 914, 919 (Iowa 1976)); *see also St. Joseph Hosp. v. Peterson*, 196 N.W.2d 418, 419 (Iowa 1972).  This general rule applies in this case, and consequently the questions of whether the board had authority under Iowa Code section 17A.18A(1) to issue the temporary order, and whether grounds for the temporary order were established under the circumstances of this case, were rendered moot upon the board's issuance of the permanent order.[9]

**B.  Permanent Injunction.**  In its order granting injunctive relief, the board "permanently enjoined" EBTC from blocking the traffic at issue without prior approval of the board.  EBTC bears on judicial review the

---

[9]We conclude below that the board, an administrative agency, does not have authority to grant a permanent injunction (a remedy granted only by courts).  We also conclude, however, that the board does have authority (except in circumstances not claimed here) to issue orders directing a utility to refrain from discontinuing service without the board's permission or taking action that disadvantages a customer who has chosen to receive services from another carrier.  In this case the board first issued a temporary order directing EBTC to refrain from blocking traffic; and later, after a contested case hearing, the board issued an order directing EBTC to permanently refrain from such conduct.  For the same reasons that a challenge to a temporary injunction issued by a court is moot after the issuance of a permanent injunction, EBTC's challenge to the board's temporary order became moot under the circumstances of this case when, after a hearing on the merits, the board entered a permanent order.

burden of proving the invalidity of the board's action and resulting prejudice. Iowa Code § 17A.19(8)(*a*).

An injunction is a judicial remedy enforceable through a court's authority to find a party in contempt. Iowa R. Civ. P. 1.1501-1.1511. The legislature has authorized the board to request the district court to issue injunctions to stop perceived violations of chapter 476. Iowa Code § 476.14. But the board, an administrative agency within the Executive Branch of state government, has no authority to grant judicial remedies. *See* Iowa Const. art. III, § 1 (dividing the powers of government into three departments and generally providing that a person exercising powers of one department shall not exercise powers of the other departments); *id.* art. V, § 1 (vesting the judicial power in courts).

Our disposition of this case is not controlled, however, by our determination that the board lacks judicial power to issue injunctions. EBTC is entitled to relief on judicial review under Iowa Code chapter 17A only if it has met its burden to prove the invalidity of agency action and resulting prejudice. Iowa Code § 17A.19(8)(*a*). As the party seeking relief from the board's action, EBTC must prove its substantial rights were prejudiced by the board's action. *Id.* § 17A.19(10) (authorizing a court to grant judicial relief from agency action if the substantial rights of the person seeking relief have been prejudiced). We must therefore determine whether EBTC has established the invalidity of the order of December 23, 2004, and resulting prejudice as a consequence of the board's characterization of the order as one "granting injunctive relief" permanently "enjoining" EBTC from blocking traffic.

The legislature has delegated to the board broad authority to regulate utilities. *Id.* § 476.2(1) (conferring "broad general powers to effect the

purposes of [chapter 476]"). Among the board's express powers relevant to this case is the authority to grant or withhold permission for certain utility actions. *See, e.g., id.* § 476.20(1) (prohibiting discontinuation of utility service without permission of the board except in cases of emergency, nonpayment of account, or violation of rules and regulations)[10]; *see also id.* § 476.3(1) (delegating to the board the express authority to determine the legality of a proposed discontinuance of service and, upon a determination of illegality, to determine what would constitute "just, reasonable, and nondiscriminatory" service, "to be observed and enforced"); *id.* § 476.101(9) (authorizing the board to determine whether a utility's action "disadvantages a customer who has chosen to receive services from another telecommunications carrier").

In addition to these examples of broad authority expressly conferred upon it by statute, the board exercises authority "necessarily inferred from the power expressly granted." *Iowa Power & Light Co. v. Iowa State Commerce Comm'n*, 410 N.W.2d 236, 240 (Iowa 1987). The authority of the board to make expressly delegated determinations affecting utilities and the public would be illusory if the board lacked the corresponding power to issue orders implementing them. Indeed, the authority to issue orders is clearly implicit in the legislature's delegation to the board of authority to levy and collect civil penalties for violation of orders lawfully issued by the

---

[10]EBTC does not contend on judicial review that the board's order is invalid because the plan to block traffic was justified by an emergency, a carrier's nonpayment of an account, or violation of rules and regulations. Neither does EBTC contend it obtained the board's permission to block the traffic in question, nor that such permission was improperly denied when requested. As noted above, EBTC limits its argument on appeal to the proposition that the board lacks authority to grant injunctions; and, in the alternative, even if the board has authority to grant injunctions, grounds for such relief were not established in this case.

board, Iowa Code § 476.51,[11] and the authority to seek a judicial remedy against utilities who violate a board order, *id.* § 476.14. We therefore conclude that within the broad "general powers" and implied authority of the board under section 476.2(1) is the authority to permanently order EBTC not to block traffic in violation of chapter 476. Accordingly, EBTC has failed to meet its burden to establish the invalidity of the order.

We conclude EBTC has also failed to establish its substantial rights were prejudiced by the board's characterization of its order as a grant of permanent "injunctive relief." The board's use of judicial vernacular really added nothing to the order that would constitute cognizable prejudice under section 17A.19(1). If EBTC should fail to comply with the order, the board is without judicial power to punish noncompliance with contempt. Such punishment could be sought by the board in a judicial proceeding commenced as authorized in section 476.14, but it could be imposed only by a court according to a well-established legal standard that has no regard for whether the allegedly violated order purports to grant injunctive relief—a judicial remedy beyond the power of the board. If EBTC blocks traffic in contravention of the order, the board could of course impose a civil penalty under section 476.51, but that sanction would be available to the board whether or not it has characterized the order as a grant of permanent "injunctive relief." Thus, under the circumstances of this case, we conclude EBTC has failed to establish such prejudice as would permit the court to grant on judicial review the requested relief from the board's action.

---

[11]When the board deems such civil penalties inadequate to stop a utility's violation of chapter 476 or a board order, it may commence suit in the district court to seek an injunction or other judicial remedy calculated to prevent the violation. Iowa Code § 476.14.

**IV.    Conclusion.**

We find moot the question of whether the board had authority to issue the temporary order purporting to grant injunctive relief under the circumstances of this case.  The board has authority to order EBTC to permanently refrain from blocking the disputed traffic delivered to it by Qwest.  EBTC has failed to establish the invalidity of the "Order Granting Injunctive Relief," and has not shown such prejudice as would entitle it to relief on judicial review.  Accordingly, we affirm.

**AFFIRMED**.

All justices concur except Appel, J., who takes no part.