# IN THE SUPREME COURT OF IOWA

No. 19–0022

Filed June 5, 2020

**STATE OF IOWA,**

Appellee,

vs.

**DANIEL WESLEY DAVIS JR.,**

Appellant.

---

Appeal from the Iowa District Court for Tama County, Mary E. Chicchelly, Judge.

Defendant appeals restitution orders. **RESTITUTION ORDERS VACATED AND CASE REMANDED WITH INSTRUCTIONS.**

Martha J. Lucey, State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, and Brent D. Heeren, County Attorney, for appellee.

**WATERMAN, Justice.**

In *State v. Albright,* we held that "any temporary, permanent, or supplemental order regarding restitution is not *appealable or enforceable* until the court files its final order of restitution" after a determination of the defendant's reasonable ability to pay. 925 N.W.2d 144, 162 (Iowa 2019) (emphasis added). Daniel Davis Jr. filed this direct appeal from his judgment of conviction challenging only the restitution awarded without a determination of his reasonable ability to pay and without the district court's final order of restitution. The State argues his appeal must be dismissed because such restitution orders are not "appealable" under *Albright.* We retained this case to clarify *Albright.*

On our review, we reiterate that such interim restitution orders are not enforceable and collection efforts must await the district court's determination of the defendant's reasonable ability to pay all items of restitution and entry of the final order of restitution. Interim orders should state that no sums are due before then. Defendants may seek appellate review of interim restitution orders in a direct appeal of right from the judgment of conviction. The district court in this case did not have the benefit of *Albright,* and we vacate the restitution orders and remand this case for further proceedings consistent with this opinion.

## I. Background Facts and Proceedings.

On August 23, 2017, Detective Jacob Molitor of the Meskwaki Nation tribal police investigated a hit and run collision in the Meskwaki Bingo Casino Hotel parking lot in Tama. Surveillance video showed a gray 4x4 pickup backing out of a parking spot into a hotel guest's Lexus ES 350, which suffered a broken taillight and scrapes on the bumper. Two days later, hotel security and the tribal police located the suspect truck, which had scrapes and plastic consistent with taillight material embedded

in its fender. They apprehended the truck's occupants, two males, in the hotel lobby. The suspects were uncooperative and placed under arrest. Officers determined that one of the suspects, Daniel Davis Jr., had been the driver of the truck.

Officers soon learned that the truck, a silver 2015 Dodge Ram 2500 Cummins Diesel Laramie 4x4 pickup truck, had been stolen from Car City, Inc. in Des Moines. They also learned that the license plates on the Dodge were registered to a different vehicle. During their search of the Dodge, the officers found a bag containing methamphetamine in the truck bed belonging to Davis and located two DEWALT® rechargeable batteries that later were determined to have been stolen from a hotel guest's work truck in the parking lot of the Drury Inn in Grove City, Ohio.

On May 9, 2018, Davis was charged with theft in the first degree for the stolen Dodge, theft in the third degree for the DEWALT® rechargeable batteries, theft in the third degree for the stolen dealer plate, and possession of a controlled substance (methamphetamine), third offense. Given that he had at least two prior felony convictions, Davis faced the habitual offender enhancement for the felony charges. The district court appointed counsel to represent Davis.

On August 16, Davis reached a plea agreement pursuant to which he entered *Alford*[1] pleas to second-degree theft in violation of Iowa Code sections 714.4 and 714.2(2) (2017) for the stolen Dodge and to possession of a controlled substance, third offense, in violation of sections 124.401(5), 703.1, and 703.2. Under the plea agreement, the other two theft charges were dismissed, and the State agreed not to pursue the habitual felony enhancement. During the sentencing hearing, the prosecutor described

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970).

the plea agreement and stated, "I'd recommend the minimum fine and restitution. I have no objection to the Court suspending that fine in lieu of the restitution owed, Defendant's costs and attorney fees." Defense counsel agreed, and Davis told the court he understood the plea. The court described the fines and surcharges and engaged in a colloquy to ensure that Davis understood that he may be required to pay restitution:

> THE COURT: Also, Mr. Davis, as a consequence for pleading guilty, you may also be required to make restitution to any victims of each of these offenses. Do you understand that?
>
> MR. DAVIS: Yes, ma'am.
>
> THE COURT: And you will also be required to pay any court costs and court appointed attorney fees. Do you understand that?
>
> MR. DAVIS: Yes, ma'am.

Later, the court again emphasized this point:

> THE COURT: Now, if you plead guilty, you may also have to make victim restitution, restitution for court costs and restitution for court-appointed attorney fees if your lawyer is court appointed. Do you understand all of that?
>
> MR. DAVIS: Yes, ma'am.

At the close of the sentencing hearing, the court ordered Davis to pay certain fines, surcharges, and victim restitution, stating,

> The Defendant is further sentenced to pay a fine in the amount of $750, together with a 35 percent surcharge. The Defendant is further sentenced to pay a law enforcement initiative surcharge in the amount of $125 with regard to each count and a DARE surcharge associated with Count Four. The fine shall be suspended in each of these counts. . . . The Defendant shall be ordered to pay restitution to the victim or victims of his crime relative to Count One. That restitution will be determined -- the Court is now ordering the State to file a statement of pecuniary damages with regard to Count One within 30 days of today's date.

On August 16, the district court entered an order accepting the guilty plea in the same filing as its judgment of conviction and sentence.

The court sentenced Davis to a maximum of five years imprisonment for the theft offense (count I) and a maximum of five years imprisonment for the drug possession offense (count IV), to run concurrently along with other sentences that Davis was already serving. The written order addressed costs and restitution as follows:

> Defendant is ordered to pay a fine in the amount of $750 on Count I and $750 on Count 4; and the required 35 percent surcharges on each count. The Defendant is assessed the $125 Law Enforcement Initiative Surcharge on each Count I and Count IV; and on Count 4, the Defendant is assessed the $10 DARE surcharge. The fines on both Count I and Count IV are suspended by the court.
>
> *Defendant is assessed the fees of court-appointed counsel in the amount approved pursuant to the contract with the State Public Defender in addition to any and all court costs in this matter.*
>
> . . . .
>
> **Counts II and III are dismissed at Defendant's cost.**
>
> With regard to Count I, the Defendant is ordered to pay victim restitution pursuant to a Statement of Pecuniary Damages which shall be filed by the State within 30 days.

(Emphasis added.)

On August 28, the clerk of court filed a "restitution plan" listing $405.50 in costs that Davis was "ordered to pay," which reflected a $100 filing and docketing fee, a $40 court reporter fee, and $265.50 in Sheriff's (jail) fees. Three days later, the State filed a statement of pecuniary damages seeking $2000 in restitution to the owner of the stolen Dodge. That same day the court granted the statement, ordered Davis to pay victim restitution of $2000, and ordered Davis to file any objection within ten days. Davis instead filed a notice of appeal.[2]

---

[2]Five days later, the Iowa Department of Corrections (DOC) filed a restitution plan reflecting both the $405.50 in costs and $2000 in victim restitution for a total of $2405.50. This document states that Davis "has been ordered to pay the County Clerk of Court **20 percent** of all credits" to his prison account, and it states that an attempt to violate the plan's conditions will result in major disciplinary proceedings. This plan was

On appeal, Davis challenges the restitution he was ordered to pay without a determination of his reasonable ability to pay. He does not challenge his conviction or prison sentence, nor the victim restitution award. We retained the appeal.

## II. Standard of Review.

"We review restitution orders for correction of errors at law." *Albright*, 925 N.W.2d at 158. "[W]e determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law." *Id.* (alteration in original) (quoting *State v. Klawonn*, 688 N.W.2d 271, 274 (Iowa 2004)).

## III. Analysis.

This dispute concerns the proper application of *Albright*. There, we held that "any temporary, permanent, or supplemental order regarding restitution is not appealable or enforceable until the court files its final order of restitution." *Id.* at 162. Davis asserts that the district court erred by ordering him to pay restitution without a final order of restitution or finding as to his reasonable ability to pay. Davis asks that we vacate the portion of the sentencing order requiring him to pay court costs and attorney fees and remand for a restitution hearing and final order at which the district court will determine his reasonable ability to pay. The State contends that under *Albright*, the district court was not required to determine Davis's reasonable ability to pay before entry of its final order of restitution, which had not yet occurred when Davis filed his notice of appeal. Accordingly, the State argues that the appeal must be dismissed as premature.

---

signed by a DOC official. The district court never entered an order approving the DOC statement or providing a final order of restitution, nor did it conduct a hearing or otherwise determine Davis's reasonable ability to pay restitution.

We begin our analysis by reviewing restitution requirements. Iowa Code chapter 910 governs restitution. *See id.* at 158–61. There are two categories of restitution. *Albright,* 925 N.W.2d at 159; *see* Iowa Code § 910.2(1). The first category involves "restitution 'to the victims of the offender's criminal activities [and] to the clerk of court for fines, penalties, [and] surcharges,'" and "[t]he court is required to order restitution for the items in this first category regardless of the offender's reasonable ability to pay." *Albright,* 925 N.W.2d at 159 (first and second alteration in original) (quoting Iowa Code § 910.2(1)). The court's order for Davis to pay $2000 in restitution to the victim of his crime falls within this first category, and the court was not required to determine his reasonable ability to pay this amount before ordering the victim restitution. That amount is not in dispute.

The second category of restitution includes,

> (1) Crime victim [compensation program] reimbursement.
>
> (2) Restitution to public agencies pursuant to section 321J.2, subsection 13, paragraph "b".
>
> (3) *Court costs including correctional fees approved pursuant to section 356.7.*
>
> (4) Court-appointed attorney fees ordered pursuant to section 815.9, including the expense of a public defender, when applicable.
>
> (5) Contribution to a local anticrime organization.
>
> (6) Restitution to the medical assistance program pursuant to chapter 249A.

Iowa Code § 910.2(1)(*a*)(1)–(6) (emphasis added). The court can only order the defendant to pay second-category restitution after "all such items are before the court and the court has then made a reasonable-ability-to-pay determination." *State v. Gross,* 935 N.W.2d 695, 702 (Iowa 2019); *Albright,* 925 N.W.2d at 162. Davis challenges the correctional fees included in the

$405.50 in court costs and the unknown amount of court-appointed attorney fees he was ordered to pay without a determination of his reasonable ability to pay.

In *Albright,* we "urg[ed] the sentencing court to take whatever steps necessary to ensure the items of restitution are before the court at the time of sentencing." 925 N.W.2d at 160. However, the Code recognizes that the amount of restitution may not be available at the time of sentencing, and it allows the court to enter supplemental orders. *See* Iowa Code § 910.3. Importantly,

> A plan of restitution is not complete until the court issues the final restitution order. Until the court issues the final restitution order, the court is not required to consider the offender's reasonable ability to pay. Restitution orders entered by the court prior to the final order are not appealable as final orders or enforceable against the offender. The reason for these orders being nonappealable or enforceable is that the final order of restitution must take into account the offender's reasonable ability to pay.

*Albright,* 925 N.W.2d at 160–61 (citations omitted).

After thoroughly discussing the governing statutes in *Albright,* we vacated the restitution order because "the court found Albright had the reasonable ability to pay and ordered restitution for items in the second category of restitution without having the amount of each item of restitution before it." *Id.* at 162. We remanded the case to the district court to conduct the proper process for restitution as laid out in the opinion. *Id.* at 162–63. Our disposition in *Albright* and subsequent decisions generated some confusion over the timing and path for appellate review.

Shortly after *Albright,* in *State v. Headley*, we reviewed a restitution order and the defendant's claim that the court imposed restitution without determining his reasonable ability to pay. 926 N.W.2d 545, 548 (Iowa

2019). Headley's appeal was properly before us because the court *had* issued a final restitution order:

> On June 8, the Polk County Sheriff's Department filed an application for reimbursement for $13,695. The reimbursement covered Headley's room and board for 238 days of incarceration. On June 12, *the court approved* the sheriff's application for reimbursement and *assessed* a total of $14,228.80 to Headley for court costs and correctional fees.

*Id.* at 549. We vacated the order and remanded the case for the district court to determine Headley's reasonable ability to pay. *Id.* at 553. *Headley* is consistent with *Albright.*

In three other cases, we vacated restitution orders entered without the requisite final restitution order. Each of these cases was decided either on the same day as *Albright* or within days of that decision, and as in *Albright*, our dispositions in each case reflected that the district courts did not have the benefit of *Albright* in issuing the restitution orders. *See State v. McMurry*, 925 N.W.2d 592, 601 (Iowa 2019); *State v. Petty*, 925 N.W.2d 190, 197 (Iowa 2019); *State v. Covel*, 925 N.W.2d 183, 189 (Iowa 2019). The same is true in this case. Accordingly, we vacate the $405.50 cost order as unenforceable. We also vacate the restitution provision in the sentencing order that ordered Davis to pay his court-appointed attorney fees (in an unstated amount) and court costs without a final restitution order or determination of his reasonable ability to pay.

We reiterate that the district court does not have an obligation to conduct the reasonable-ability-to-pay determination until all items of restitution are before it and the final order of restitution is entered. *See Albright*, 925 N.W.2d at 160–61. Going forward, we reemphasize that "any temporary, permanent, or supplemental order regarding restitution is not . . . enforceable until the court files its final order of restitution" after determination of the defendant's reasonable ability to pay. *Id.* at 162.

Such interim orders should state that the defendant is not obligated to pay the sum until entry of the final order of restitution and the reasonable-ability-to-pay determination. These interim orders are like an open bar tab, or the "shopping cart" for online purchases, with payment delayed until the final tally. The district court should halt premature efforts to collect restitution.

Before the final judgment of sentence, there is no right of direct appeal from interim restitution orders preceding the court's final order of restitution, as such interim orders are nonfinal. *Id.* at 160–61. Appeals from such nonfinal orders alone should be dismissed as premature or treated as requesting discretionary or certiorari review. Our appellate courts, however, can and should review interim restitution orders included in direct appeals from the final judgment of sentence. To the extent that such interim restitution orders purport to allow enforcement, our appellate courts should vacate the order or remand for clarification that the order is not enforceable until the court enters a final order of restitution after the requisite determination of the defendant's reasonable ability to pay.

We reiterate that "a defendant challenging a restitution order entered as part of the original sentence has two options: to file a petition in district court under section 910.7, or to file a direct appeal." *State v. Blank*, 570 N.W.2d 924, 926 (Iowa 1997) (per curiam). "[O]nce the deadline for direct appeal has run, the defendant is limited to filing a petition to modify restitution (or the plan of restitution) under Iowa Code section 910.7." *Gross*, 935 N.W.2d at 699. But as we hold today, the defendant is not required to exhaust remedies under section 910.7[3] as a

---

[3]Iowa Code section 910.7 reads,

> 1. At any time during the period of probation, parole, or incarceration, the offender or the office or individual who prepared the offender's restitution plan may petition the court on any matter related to

prerequisite for appellate review of a restitution order in a direct appeal from a judgment of sentence. We hereby overrule statements to the contrary in *State v. Jackson*, 601 N.W.2d 354, 357 (Iowa 1999) ("Unless that [section 910.7] remedy has been exhausted, we have no basis for reviewing the issue in this court."), and *State v. Swartz*, 601 N.W.2d 348, 354 (Iowa 1999) (same).

## IV. Disposition.

For the foregoing reasons, we vacate the restitution orders and remand this case for further proceedings consistent with this opinion.

**RESTITUTION ORDERS VACATED AND CASE REMANDED WITH INSTRUCTIONS.**

All justices concur except McDonald, J., who dissents.

---

the plan of restitution or restitution plan of payment and the court shall grant a hearing if on the face of the petition it appears that a hearing is warranted.

2. After a petition has been filed, the court, at any time prior to the expiration of the offender's sentence, provided the required notice has been given pursuant to subsection 3, may modify the plan of restitution or the restitution plan of payment, or both, and may extend the period of time for the completion of restitution.

3. If a petition related to a plan of restitution has been filed, the offender, the county attorney, the department of corrections if the offender is currently confined in a correctional institution, the office or individual who prepared the offender's restitution plan, and the victim shall receive notice prior to any hearing under this section.

**McDONALD, Justice (dissenting).**

Criminal restitution is a creature of statute. Over the course of many years, our cases have interpreted and applied the relevant statutes to create a practical and workable procedure for district courts to assess and impose restitution against an offender in a manner that also protects the offender's rights. I would adhere to those precedents. The majority overrules those precedents and instead directs district courts to enter unenforceable open-bar-tab and shopping-cart orders. In my view, the majority opinion is not supported by statute or case law. The majority opinion further unsettles established practices and procedures and creates more confusion for the district courts and other government officials involved in the administration of criminal restitution. I respectfully dissent.

I.

The relevant statutes and cases can be harmonized to create fairly clear rules regarding the assessment, imposition, and administration of restitution. Judge Mullins provided an excellent overview of the statutory restitution scheme in *State v. Kurtz*, stating,

> There are two distinct parts that make up a restitution order: the plan of restitution and the restitution plan of payment. The plan of restitution sets out the amounts and kind of restitution in accordance with the priorities established in section 910.2. The restitution plan of payment is the next step that sets out the schedule for the offender to carry out the terms of the plan of restitution.

878 N.W.2d 469, 471–72 (Iowa Ct. App. 2016) (citations omitted). As Judge Mullins explained in *Kurtz*, a complete plan of restitution sets out all of "the amounts and kind of restitution." *Id.* A complete plan of

payment includes an ability-to-pay determination as well as the schedule for the defendant "to carry out the terms of the plan of restitution." *Id.*

A.

I first address the plan of restitution. It is always the district court's obligation to create the plan of restitution. That is, only the district court can assess and impose the "amounts and kind of restitution in accordance with the priorities established in section 910.2." *Kurtz*, 878 N.W.2d at 471.

The Code creates two categories of restitution. The first category of restitution involves "restitution 'to the victims of the offender's criminal activities [and] to the clerk of court for fines, penalties, [and] surcharges.' " *State v. Albright*, 925 N.W.2d 144, 159 (Iowa 2019) (alterations in original) (quoting Iowa Code § 910.2(1) (2017)). The district "court is required to order restitution for the items in this first category regardless of the offender's reasonable ability to pay." *Id.*

The second category of restitution includes various items, such as court costs, costs of appointed counsel, and jail fees. *See* Iowa Code § 910.2(1)(*a*)(1)–(6). At the time of sentencing, the district court has no duty to determine whether the defendant has the reasonable ability to pay second-category restitution where the district court does not have each item of restitution before it. *Albright* explained, "Until the court issues the final restitution order, the court is not required to consider the offender's reasonable ability to pay." *Albright*, 925 N.W.2d at 160–61. *Albright* reiterated, "Once the court has all the items of restitution before it, *then and only then* shall the court make an assessment as to the offender's reasonable ability to pay." *Id.* at 162 (emphasis added).

Indeed, *Albright* held that it was an abuse of discretion for the district court to affirmatively find the defendant had the reasonably ability to pay restitution "without having the amount of each item of restitution

before it." *Id.* We reaffirmed this holding in *State v. Gross*. 935 N.W.2d 695, 701–02 (Iowa 2019) ("In *Albright*, the court had made an advance determination that the defendant had a reasonable ability to pay before certain second-category restitution amounts were actually known. We held this was 'contrary to the statutory scheme'; accordingly, we reversed and remanded." (citation omitted) (quoting *Albright*, 925 N.W.2d at 162)).

The fact that the district court does not have each item of restitution before it at the time of sentencing does not preclude the district court from ordering an offender to pay category-two restitution in a particular amount. The Code specifically contemplates the district court may not be able to set the complete plan of restitution at the time of sentencing and provides a mechanism for the district court to establish the plan of restitution in piecemeal fashion:

> If the full amount of restitution cannot be determined at the time of sentencing, the court shall issue a temporary order determining a reasonable amount for restitution identified up to that time. At a later date as determined by the court, the court shall issue a permanent, supplemental order, setting the full amount of restitution. The court shall enter further supplemental orders, if necessary. These court orders shall be known as the plan of restitution.

Iowa Code § 910.3. This court has acknowledged that "a district court may set the actual 'amount' of restitution either '[a]t the time of sentencing or at a later date to be determined by the court.' " *Speer v. Blumer*, 483 N.W.2d 599, 600 (Iowa 1992) (alteration in original) (quoting Iowa Code § 910.3). Recognizing the statutory scheme, this court has also recognized that the district "court need not set the actual 'amount' of restitution at the same time that it 'orders' restitution." *Id.* at 600–01.

B.

The second part of criminal restitution is the restitution plan of payment. The Code gives the primary responsibility for establishing the restitution plan of payment to persons other than the district court, subject to the district court's review and approval in some circumstances.

When the district court places an offender on probation, the responsibility for fashioning the restitution plan of payment is set forth in Iowa Code sections 910.4 and 910.6. When the district court places an offender on probation, the probation officer shall set the restitution plan of payment and need not obtain court approval in setting the restitution plan of payment. *See id.* §§ 910.4, .6. "When the offender is committed to a county jail, or to an alternate facility, the office or individual charged with supervision of the offender shall prepare a restitution plan of payment taking into consideration the offender's income, physical and mental health, age, education, employment and family circumstances." *Id.* § 910.4(2). In this latter circumstance, "[t]he office or individual charged with supervision of the offender shall review the plan of restitution ordered by the court, and shall submit a restitution plan of payment to the sentencing court." *Id.* § 910.4(2)(*a*). The sentencing court "may approve or modify the plan of restitution and restitution plan of payment." *Id.* § 910.4(2)(*c*).

When an offender is committed to the custody of the Iowa department of corrections "pursuant to a sentence of confinement, the sentencing court shall forward to the director a copy of the offender's restitution plan [and] present restitution payment plan if any." *Id.* § 910.5(1)(*a*). The Code vests the director of the department or the director's designee with the authority to "prepare a restitution plan of payment or modify any existing plan of payment." *Id.* § 910.5(1)(*d*). The

restitution plan of payment shall be based on the offender's ability to pay when taking into consideration the offender's individual circumstances. *See id.* at § 910.5(1)(*d*)(1)–(2) (requiring the department of corrections to consider the offender's "present circumstances" when making or modifying a plan of payment); *id.* at § 910.5(2)(*a*)(1)–(2) (same); *id.* at § 910.5(3)(*a*)(1), (3) (same); *id.* at § 910.5(4)(*a*)(1), (3) (same); *Walters v. Grossheim*, 525 N.W.2d 830, 832 (Iowa 1994) ("Nevertheless the restitution plan of payment is required to reflect individualized factors bearing on the inmate's ability to pay.").

The code also provides that the director of the department of corrections shall adopt administrative rules relating to restitution plans of payment. *See* Iowa Code § 910.5(5) ("The director of the Iowa department of corrections shall adopt rules pursuant to chapter 17A concerning the policies and procedures to be used in preparing and implementing restitution plans of payment for offenders . . . ."). The department has adopted the required rules. The rules provide for predeprivation notice and the opportunity to challenge any restitution plan of payment prior to deduction from an inmate's account. *See* Iowa Admin. Code r. 201—20.11(4)–(5).

## C.

As set forth above, the Code creates a flexible and workable structure for the assessment, imposition, and administration of criminal restitution. The Code recognizes that frequently a sentencing court will not have all of the relevant information before it at the time of sentencing. The Code allows the sentencing court to proceed based upon the information "identified up to that time." Iowa Code § 910.3. The Code also recognizes that other government officials have a part to play in

establishing and administering the restitution plan of payment subject, in some instances, to the district court's review and approval.

In the event that an offender actually has an issue with the plan of restitution or restitution plan of payment, the Code also provides a mechanism for the district court to review and modify the offender's plan of restitution or restitution plan of payment. "[T]he offender or the office or individual who prepared the offender's restitution plan may petition the court on any matter related to the plan of restitution or restitution plan of payment. . . ." *Id.* § 910.7(1). Upon notice and a hearing, the district court "may modify the plan of restitution or the restitution plan of payment, or both." *Id.* § 910.7(2). The section 910.7 process is a failsafe that ensures an offender who takes issue with the plan of restitution or restitution plan of payment or who needs modification based on changed circumstances can obtain review in the district court.

## II.

With that background, I directly address Davis's claim. Davis contends the district court failed to determine his reasonable ability to pay second-category restitution when, at the time of sentencing, the district court did not have each item of restitution before it. Under long-established precedents, Davis's challenge is premature and does not entitle him to any relief.

The leading cases resolving this type of challenge are *State v. Swartz*, 601 N.W.2d 348 (Iowa 1999), and *State v. Jackson*, 601 N.W.2d 354 (Iowa 1999). In *Swartz*, the district court "ordered restitution for the amount of the court costs and defendant's court-appointed attorney fees without first making a determination of the defendant's ability to pay." *Swartz*, 601 N.W.2d at 354. *Swartz* concluded the defendant could not assert his challenge on direct appeal for two reasons. "First, it [did] not

appear that the plan of restitution contemplated by Iowa Code section 910.3 was complete at the time the notice of appeal was filed. Second, Iowa Code section 910.7 permits an offender who is dissatisfied with the amount of restitution required by the plan to petition the district court for a modification." *Id.*

In *Jackson*, the district court ordered the defendant to pay court costs, "court-appointed attorney fees," "restitution for pecuniary damages," and "room and board jail expenses," although restitution for pecuniary damages and restitution for room and board jail expenses were not yet available. *Jackson*, 601 N.W.2d at 355. *Jackson* concluded the defendant was precluded from asserting that challenge on appeal because the plan of restitution was not complete and because the defendant could seek relief pursuant to Code section 910.7. *See id.* at 357.

We reaffirmed and clarified *Swartz* and *Jackson* in *State v. Jose*, 636 N.W.2d 38 (Iowa 2001). Unlike the defendants in *Swartz* and *Jackson*, who challenged the district court's failure to make an ability-to-pay determination, the defendant in *Jose* challenged "the amount of restitution ordered." *Id.* at 43. *Jose* concluded the defendant could challenge on direct appeal the amount of restitution. *Id.* at 45. The court explained a challenge to the amount of restitution was separate and distinct from a challenge to the district court's failure to determine the defendant's reasonable ability to pay:

> Likewise, the facts in this case differ from those in *Swartz* and *Jackson* in only one respect. Here, Jose challenges the amount of restitution, whereas in *Swartz* and *Jackson* the defendants only challenged the district court's failure to determine their *ability to pay*. The defendants in *Swartz* and *Jackson* were therefore challenging the "restitution plan of payment," rather than the actual "plan of restitution." At issue here is the plan of restitution, rather than the plan of payment.

*Id.* (citation omitted). *Jose* further explained "[t]he amount of restitution is part of the sentencing order and is therefore directly appealable, as are all orders incorporated in the sentence. The ability to pay is an issue apart from the amount of restitution and is therefore not an 'order[] incorporated in the sentence' and is therefore not directly appealable as such." *Id.* (second alteration in original) (citation omitted).

Just like the defendants in *Swartz* and *Jackson,* Davis challenges the district court's restitution order on the ground the district ordered Davis to pay restitution "without first making a determination of [Davis]'s ability to pay." *Swartz,* 601 N.W.2d at 354; *see Jackson,* 601 N.W.2d at 357. Just like the defendants in *Swartz* and *Jackson,* "the plan of restitution contemplated by Iowa Code section 910.3 was [not] complete at the time [Davis's] notice of appeal was filed." *Swartz,* 601 N.W.2d at 354; *see Jackson,* 601 N.W.2d at 357. Just like the defendants in *Swartz* and *Jackson,* Davis's challenge to the district court's failure to determine his reasonable ability to pay is premature. Pursuant to *Swartz* and *Jackson,* Davis must exhaust his remedies under Iowa Code section 910.7. *See State v. Haas,* 930 N.W.2d 699, 704 (Iowa 2019) ("It does not appear there was a plan of restitution in place when Haas filed her appeal, so 'the court is not required to consider the offender's reasonable ability to pay.' " (quoting *Albright,* 925 N.W.2d at 161)); *Albright,* 925 N.W.2d at 161; *Swartz,* 601 N.W.2d at 354; *Jackson,* 601 N.W.2d at 357.

## III.

Rather than adhering to these precedents, the majority overrules them. In lieu of the long-standing framework established by statute and case law, the majority vacates the district court's sentence with instruction that the district court create an unenforceable order that the majority likens to an open bar tab or an online shopping cart. I respectfully

disagree with this approach. Stare decisis counsels against it. Case law and the relevant statutes prohibit it.

A.

The doctrine of stare decisis counsels against the majority's decision to overrule the relevant precedents. The doctrine of stare decisis holds that courts should defer to precedent. The doctrine has much to commend it. *See State v. Gaskins*, 866 N.W.2d 1, 39–40 (Iowa 2015) (Waterman, J., dissenting) (summarizing "values fostered by stare decisis"). Among other things, stare decisis advances stability and consistency in the law. *See Miller v. Westfield Ins.*, 606 N.W.2d 301, 310 (Iowa 2000) (en banc) (Cady, J., dissenting). It increases efficiency in the decision making process. *See* Benjamin N. Cardozo, *The Nature of the Judicial Process* 145 (Dover Publ'ns 2005) (1921) ("[T]he labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case, and one could not lay one's own course of bricks on the secure foundation of the courses laid by others who had gone before him."). It promotes respect for the judiciary as a neutral decision maker and advances the rule of law. *See Gaskins*, 866 N.W.2d at 40.

The doctrine of stare decisis has particular force with respect to cases interpreting statutes. As this court recently explained:

> [T]he path we follow in this case is one primarily built on the venerable principles of stare decisis and legislative acquiescence. We are slow to depart from stare decisis and only do so under the most cogent circumstances. Moreover, we presume the legislature is aware of our cases that interpret its statutes. When many years pass following such a case without a legislative response, we assume the legislature has acquiesced in our interpretation.
>
> . . . .
>
> . . . Overall, we think our legislature would be quite surprised to learn if we decided to reverse course and take a different position under the guise of statutory interpretation.

> We did our job twenty-seven years ago and will leave it for the legislature to take any different approach. The specific arguments presented by the plaintiffs are not so powerful or obvious that they plainly undermine our prior line of cases.

*Doe v. New London Cmty. Sch. Dist.*, 848 N.W.2d 347, 355–56 (Iowa 2014) (alteration in original) (quoting *Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 688 (Iowa 2013)).

There are no cogent circumstances present in this case that warrant overruling *Swartz* or *Jackson*. *Albright* did not in any way modify or limit *Swartz* or *Jackson*. To the contrary, *Albright* reaffirmed those decisions. Citing *Jackson*, *Albright* explained, "Until the court issues the final restitution order, the court is not required to consider the offender's reasonable ability to pay." *Albright*, 925 N.W.2d at 160–61. *Albright* reiterated, "Once the court has all the items of restitution before it, *then and only then* shall the court make an assessment as to the offender's reasonable ability to pay." *Id.* at 162 (emphasis added). *Jackson* and *Swartz* worked in tandem with a very complex statutory scheme to create a workable and fair framework for the assessment, imposition, and administration of restitution in criminal matters. As in *Doe*, the legislature will be "quite surprised" to learn that we have switched course after twenty-one years and reinterpreted the restitution statutes.

### B.

Neither the case law nor the relevant statutes support the majority's decision to vacate the district court's sentencing order with instruction that the district court issue an unenforceable order.

The case law does not support the majority's conclusion that the district court can create an unenforceable order. The statute grants the district court the right to enter a "temporary order" when the district court does not have each item of restitution before it. Iowa Code § 910.3. By

definition, an order, even a temporary order, is an enforceable command, direction, or instruction issued by a court. *See Order, Black's Law Dictionary* (11th ed. 2019) (stating that an order is "[a] command, direction, or instruction" and that "[a]n order is the mandate or determination of the court" (second quote 1 Henry Campbell Black, *A Treatise on the Law of Judgments* § 1, at 5 (2d ed. 1902))). A temporary order remains enforceable until such time as it is superseded by or merged into a permanent order. *See E. Buchanan Tel. Coop. v. Iowa Util. Bd.*, 738 N.W.2d 636, 641 (Iowa 2007) (holding a temporary injunction merges into a permanent injunction and any challenge to the temporary injunction becomes moot after issuance of a permanent injunction); *Bartsch v. Bartsch*, 636 N.W.2d 3, 10 (Iowa 2001) ("We reject the first of these claims because it is moot; the court entered its permanent order, which did not purport to deal with issues of child support or visitation, and at the point the permanent order was entered, the temporary order became ineffective."); *In re Marriage of Wagner*, 604 N.W.2d 605, 610 (Iowa 2000) ("Under these principles, when a support award in a final decree is vacated, a temporary award is automatically reinstated as if there had been no final decree, unless the court's order vacating the support award shows otherwise."); *Speer*, 483 N.W.2d at 601 (stating the district court need not set the amount of restitution at the same time it orders restitution).

The statutes also do not support the creation of an unenforceable order. The majority's concern appears to be motivated to prevent the department of corrections from enforcing the district court's sentencing order. Specifically, after sentencing, the department of corrections filed a restitution plan. The restitution plan provided, "Pursuant to Chapter 910 of the Code of Iowa, the above listed Inmate has been ordered to pay the

County Clerk of Court **20 percent** of all credits to this inmate's institutional account." The "enforcement order" about which the majority is concerned is the statutory restitution plan of payment. The Code requires that persons supervising or having custody of an offender prepare a restitution plan of payment. It is nondiscretionary. Where an offender is on probation, the probation officer must create the plan of restitution. *See* Iowa Code §§ 910.4(1), .6. Where the offender "is committed to a county jail, or to an alternate facility, the office or individual charged with supervision of the offender shall prepare a restitution plan of payment." *Id.* § 910.4(2). Finally, where the offender is incarcerated and placed in the custody of the department of corrections, the department "shall prepare a restitution plan of payment." *Id.* § 910.5(1)(*d*). The majority's effort to disallow the entry of the department of corrections' restitution plan of payment seeks to prohibit the Department of Corrections from doing what it is statutorily required to do.

*Swartz, Jackson,* and *Jose* understood this statutory structure—that the restitution plan of payment is frequently prepared in the first instance by someone other than the district court and that an offender who has concerns regarding the restitution plan of payment and the ability-to-pay determination can petition the district court for review pursuant to section 910.7. Those cases reach a workable solution in accord with the statutory restitution scheme. The majority opinion works contrary to the statutory restitution scheme.

C.

Although it appears to me our precedents can be reconciled well enough, if there is any precedent that should be overruled, it is *Albright. Albright*—not *Swartz* and *Jackson*—caused the recent problems in the assessment, imposition, and administration of criminal restitution and the

concomitant flood of litigation. It is *Albright*—not *Swartz* and *Jackson*—that is contrary to the restitution statutes and contrary to the actual operation of the district courts and other government officials responsible for criminal restitution.

First, the statute. *Albright* held that the district court could not affirmatively find the defendant has the reasonable ability to pay second-category restitution until all amounts of restitution were before the court. The relevant statute specifically provides to the contrary. Indeed, the relevant statute requires it. Iowa Code section 910.3 provides, "If the full amount of restitution cannot be determined at the time of sentencing, *the court shall issue a temporary order determining a reasonable amount for restitution identified up to that time*." (Emphasis added.)

The statutory text is in accord with the actual operation of the district court and other government officials responsible for criminal restitution. There is no reason why the district court, at the time of sentencing, cannot determine "a reasonable amount of restitution identified up to that time" without knowing what additional items and amounts of restitution will be later presented to the court. *Id.* § 910.3. This is true because all items of restitution are subject to revision by the district court. For example, at sentencing, the district court could determine the defendant, based on his individual circumstances, had the reasonable ability to pay court costs and court-appointed counsel's fees in the amount of X dollars. Later, if the district court is presented with a request for victim restitution, the district court could always revisit and modify its prior assessment and imposition of court costs and court-appointed attorney's fees. The offender could also petition for reconsideration of the amount pursuant to section 910.7. If the defendant

is dissatisfied with the result of the 910.7 hearing, he or she may appeal the district court's decision.

Further, as this court has explained before, the reasonable ability to pay is not necessarily determined by an offender's ability to "pay the total amount due." *State v. Van Hoff*, 415 N.W.2d 647, 649 (Iowa 1987). Instead, the reasonable ability to pay is "more appropriately based on the inmate's ability to pay the current installments." *Id.* The restitution plan of payment, which is based on the offender's individualized ability to pay, is in accord with this requirement.

In contrast to *Albright*, the rule created in *Swartz* and *Jackson* is practical and works to the advantage of the offender. First, an offender who files a petition pursuant to section 910.7 will obtain relief more quickly in the district court versus pursing an appeal. A petition challenging the reasonable ability to pay can be resolved in weeks. In contrast, as this case demonstrates, an appeal challenging the reasonable ability to pay can take months or years. Second, and related, in the absence of a section 910.7 hearing, there is no record for appellate review. In the absence of such a record, the only relief an appellate court can provide is to remand the case for a hearing on the defendant's reasonable ability to pay—a remedy an offender could have had long prior had he or she simply sought relief pursuant to section 910.7.

### IV.

In my view, the State is correct in contending the defendant's challenge to the district court's failure to make an ability-to-pay determination is premature. In accord with *Swartz*, *Jackson*, and *Jose*, I would affirm the defendant's sentence and would affirm the requirement that a defendant exhaust his or her remedies pursuant to section 910.7

before challenging the district court's ability-to-pay determination or the failure to make the same.  For these reasons, I respectfully dissent.